STATE OF NORTH CAROLINA v. TERRENCE LEROY WRIGHT

No. COA97-49

(Filed 4 November 1997)

**1. Evidence and Witnesses § 116 (NCI4th)— burglary and murder—guilt of another—evidence excluded**

The trial court did not err in a prosecution for first-degree murder and burglary in which defendant was convicted of first-degree burglary by excluding evidence that the victim's secretary was upset that he was dating another woman after an affair of 17 to 19 years and that the secretary had committed the murder. The proposed testimony from five witnesses did no more than create mere conjecture that the secretary may have had a motive; there was no evidence linking her to a murder weapon or to the crime and the evidence was not inconsistent with defendant's guilt.

**2. Burglary and Unlawful Breakings § 75 (NCI4th)— burglary—felonious intent—evidence sufficient**

The trial court properly denied defendant's motion to dismiss a charge of first-degree burglary for insufficient evidence of felonious intent where the State presented evidence that defendant entered the victim's residence during the night, emerged with a bag containing items which he did not previously possess, and blood was noticed on defendant's clothing, indicating some type of struggle inside the house. The jury could infer from these facts the requisite felonious intent.

**3. Evidence and Witnesses § 339 (NCI4th)— murder and burglary—previous theft—evidence of ill will**

The trial court did not err in a prosecution for first-degree murder and first-degree burglary by admitting, for the purpose of showing ill will, evidence that defendant had previously stolen from the victim. N.C.G.S. § 8C-1, Rule 404(b) is a general rule of inclusion with but one exception, and it has been held that a defendant's prior assaults on the victim are admissible for the purpose of showing malice or ill will. The trial court's ruling under N.C.G.S. § 8C-1, Rule 403 that the probative value was not outweighed by the danger of unfair prejudice was not arbitrary.

Appeal by defendant from judgment entered 11 April 1997 by Judge Claude S. Sitton in Graham County Superior Court. Heard in the Court of Appeals 7 October 1997.

STATE v. WRIGHT

[127 N.C. App. 592 (1997)]

*Attorney General Michael F. Easley, by Assistant Attorney General Jill Ledford Cheek, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr. for defendant-appellant.*

WALKER, Judge.

On 3 June 1993, Michelle Carver ("Carver") entered the bedroom of her uncle Hoover Williams' ("Williams") residence and found him lying dead on the floor. The autopsy revealed 32 wounds on Williams' upper body, including a wound which "halfway severed his windpipe." The time of death was estimated to be sometime between 10:30 p.m. on 2 June 1993 and 4:00 a.m. on 3 June 1993.

Defendant was indicted for first-degree murder and first-degree burglary. The State's evidence tended to show that Williams was a grading contractor engaged in construction jobs all over the southeastern United States. He maintained a business office, managed by Verna Garland ("Garland"), on the ground floor of a two-story building in Robbinsville, North Carolina. Further, he occupied a separate, two-bedroom residence on the second floor. Occasionally, Williams would allow his employees, particularly defendant, to live in the second bedroom while working on a local job. According to defendant, he had met Williams in May 1988 in South Carolina, where Williams offered defendant a job and persuaded defendant to move to Robbinsville.

One of the State's witnesses was Carl Wright ("Wright"), a friend of defendant. According to Wright, defendant called him in May 1993 and asked him to drive defendant from Athens, Georgia to Robbinsville, North Carolina to see Williams. Wright agreed, and after they arrived at Williams' residence around 10:15 p.m. on 2 June 1993, Wright stayed in the car while defendant went inside. Soon thereafter, Wright heard a noise from inside the residence and then saw defendant emerge with a key, which he used to enter Williams' downstairs office. A short time later, defendant came out of the office wearing a blood-stained shirt and holding a white bag which contained jewelry, a stamp holder, change, blank checks and a notebook with the names and addresses of people with whom Williams had done business. Wright and defendant then headed back to Georgia, and along the way, defendant threw his shirt and some other items out of the car window. When Wright asked defendant about what had happened at Williams' residence, defendant acted nervous and agitated and told Wright the less he knew the better off he would be.

STATE v. WRIGHT

[127 N.C. App. 592 (1997)]

On the way back to Georgia, Wright and defendant stopped at a restaurant in Marietta for a meal. Since defendant had thrown his shirt out of the car window, Wright loaned him a suit jacket. Defendant paid for the meal with a one-hundred dollar bill.

Defendant's former girlfriend, Ella Marie Skelton ("Skelton"), testified that when defendant unexpectedly arrived at her home in Athens the day after Williams was killed, he was shirtless and had blood on his pants leg. Further, defendant was acting "real funny, real shaky and nervous," and when he pulled a one-hundred dollar bill from his jacket pocket he told her not to tell anyone about the money. She then heard defendant claim that they would not "pin this on [him]." After Skelton began asking defendant questions, he told her that she knew "too damn much now," and that the less she knew, the better off she would be. He then threatened to kill her if she said anything about the one-hundred dollar bill or the blood on his clothes, and began to vandalize her apartment.

In August 1993, defendant telephoned Wright and asked him to pick up some money which Betty Anderson ("Anderson") was wiring to him at a local Western Union office. When Wright went to pick up the money, he was detained by law enforcement officers and later led the officers to his house where defendant was arrested.

Defendant's former cellmate, Paul Schmitz ("Schmitz"), testified that defendant had confessed to killing Williams by stabbing him to death after Williams had refused to give him more money. Defendant told Schmitz that he had stolen four or five hundred dollars from Williams in one-hundred dollar bills.

After a jury was unable to reach a unanimous verdict on either charge in the first trial on 4 December 1995, the case was moved from Graham County to Swain County. At the second trial, the jury was again unable to reach a unanimous verdict as to the first-degree murder charge, but found defendant guilty of first-degree burglary. By a judgment entered on 11 April 1996, defendant was sentenced to thirty years in prison.

[1] Defendant first assigns as error the trial court's exclusion of third-party guilt evidence which consisted of the testimony of five witnesses. At trial, defendant attempted to introduce the testimony of Jody Carver ("Carver"), Anderson, Betty Hyde ("Hyde"), Mildred Williams and Susan Hudson ("Hudson") to show that Garland, and not he, murdered Williams.

**STATE v. WRIGHT**

[127 N.C. App. 592 (1997)]

Williams' daughter, Carver, testified on *voir dire* that she had a conversation with her father approximately three weeks before his death, during which Williams had told her that Garland was upset that he was dating Anderson, since Garland and Williams had been having an affair for approximately 17 to 19 years.

Anderson testified on *voir dire* that she had numerous conversations with Williams, during which Williams had recounted certain incidents with Garland concerning his affair with Anderson. Apparently, Garland was distraught over their affair and had scratched Williams and torn up her office in disgust. Williams also commented that he was not going to beg Garland to come back to work and he was going to find a new secretary.

Hyde testified on *voir dire* that in 1993, while she was the tax assessor in Graham County, Williams had come to her office and said, "I think there's going to be trouble, and I need to get my affairs in order." She told him to consult an attorney, and he agreed to do so.

Williams' sister, Mildred Williams, testified on *voir dire* that while she was visiting with Williams one day, Williams had said that he was upset with Garland, that he was tired of her attitude, and that he was going to fire her.

Finally, Hudson testified on *voir dire* that in May of 1993, she was a waitress at a restaurant in Robbinsville which Williams patronized, and that he came in one day "a little upset." He told her that he was sick of dealing with Garland, was depressed, and then asked Hudson if she would like to come and work for him as his secretary.

At trial, defendant argued that the foregoing testimony was relevant to show the guilt of another. The trial court concluded: (1) that the evidence was not relevant for the purpose sought; and, (2) that Williams' statements to the witnesses were excluded by the hearsay rule. On appeal, defendant contends the trial court erred in excluding the evidence on the grounds that: (1) the evidence was relevant to show that someone other than defendant, and specifically Garland, may have committed the murder; and (2) Williams' statements to the witnesses were admissible as exceptions to the hearsay rule.

It is now well-settled law that third-party guilt evidence is "governed, as it should be, by the general principle of relevancy under which the evidence will be admitted unless in the particular case it appears to have no substantial probative value." *State v. Hamlette*, 302 N.C. 490, 501, 276 S.E.2d 338, 346 (1981) (citation omitted); *see*

*also* 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 118 (4th ed. 1993). However, our Supreme Court has recently held:

> [W]here the evidence is proffered to show that someone other than the defendant committed the crime charged, admission of the evidence must do more than create mere conjecture of another's guilt in order to be relevant. Such evidence must (1) point directly to the guilt of some specific person, and (2) be inconsistent with the defendant's guilt.

*State v. McNeill*, 326 N.C. 712, 721, 392 S.E.2d 78, 83 (1990); *see also State v. Larrimore*, 340 N.C. 119, 144-145, 456 S.E.2d 789, 801-802 (1995) (evidence tending to show that victim's wife had motive to kill him properly excluded); *see also State v. Jones*, 337 N.C. 198, 210-211, 446 S.E.2d 32, 39-40 (1994) (evidence of circumstances of sale of victim's farm, offered to show motive of possible third party, did not point to guilt of specific person).

In the present case, the proposed testimony from the five witnesses did no more than "create mere conjecture" that Garland may have had a motive to commit the murder. There was no evidence linking Garland to a murder weapon or in any way linking Garland to the crime. Further, the evidence was not inconsistent with defendant's guilt. Therefore, the evidence was not relevant, and we find no error in the trial court's decision to exclude the evidence.

Under N.C. Gen. Stat. § 8C-1, Rule 402, "[e]vidence which is not relevant is not admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (1992). Therefore, since we have found that the testimonial evidence was not relevant, it is unnecessary to address defendant's claim that the evidence was admissible as an exception to the hearsay rule.

[2] Defendant next contends that the trial court erred in denying his motion to dismiss the charge of first-degree burglary on the grounds that there was insufficient evidence to warrant such a charge.

When considering a defendant's motion to dismiss for insufficiency of the evidence, the trial court must consider "whether there is substantial evidence of each essential element of the offense charged, or of a lesser included offense of that charged." *State v. Robbins*, 309 N.C. 771, 774, 309 S.E.2d 188, 190 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Scott*, 323 N.C. 350, 353, 372 S.E.2d 572, 575 (1988). The evidence must be considered in the

light most favorable to the State, and the State is entitled to every reasonable inference. *State v. Robbins*, 309 N.C. at 775, 309 S.E.2d at 190. Further, if the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence. *State v. Scott*, 323 N.C. at 353, 372 S.E.2d at 575. However, if the evidence merely raises a suspicion as to whether the defendant committed the charged offense, then it is insufficient and the motion to dismiss should be allowed. *Id.*

In a prosecution for first-degree burglary, the burden is on the State to prove that the defendant committed a: (1) breaking; (2) and entering; (3) at nighttime; (4) into the dwelling house, or a room used as a sleeping apartment, of another; (5) which is actually occupied at the time; and (6) with the intent to commit a felony therein. *State v. Wells*, 290 N.C. 485, 496, 226 S.E.2d 325, 332 (1976).

In his appeal, the defendant addresses only the sixth element of the crime, arguing that the trial court erred by not granting his motion to dismiss because there was insufficient evidence to show that he possessed the requisite felonious intent at the time he entered Williams' residence.

Felonious intent is an essential element which the State must allege and prove in order to sustain a charge of first-degree burglary. *State v. Accor and State v. Moore*, 277 N.C. 65, 72-73, 175 S.E.2d 583, 588 (1970). However, since felonious intent is a state of mind and may be inferred from a defendant's "acts, conduct, and inferences fairly deducible from all the circumstances," it is within the province of the jury to determine whether the defendant had the requisite felonious intent at the time of the breaking and entering. *Id.* at 73-74, 175 S.E.2d at 589.

In this case, the State presented evidence that defendant entered Williams' residence during the night and emerged with a white bag containing certain items which defendant did not previously possess. Further, both Wright and Skelton testified that they noticed blood on defendant's clothing, which indicates that some type of struggle took place inside the house. We find that the jury could reasonably infer from these facts that defendant possessed the requisite felonious intent at the time of the breaking and entering, and we therefore overrule this assignment of error.

**[3]** In his final assignment of error, defendant contends that the trial court erred by allowing the State to admit evidence that defendant had previously stolen from Williams for the purpose of showing ill will between the two parties.

N.C. Gen. Stat. § 8C-1, Rule 404(b) states, in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (Cum. Supp. 1996). However, it is now clear that Rule 404(b) is a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey,* 326 N.C. 268, 278-279, 389 S.E.2d 48, 54 (1990) (emphasis in original). Further, our Supreme Court has held that in a murder case, a defendant's prior assaults on the victim are admissible for the purpose of showing malice or ill will against the victim. *State v. Alston,* 341 N.C. 198, 229, 461 S.E.2d 687, 703 (1995), *cert. denied,* 134 L. Ed. 2d 100, *mandamus denied,* 472 S.E.2d 334 (N.C. 1996). In this case, the trial court could properly find that defendant's prior robbery of Williams produced feelings of ill will between the two parties.

Even if evidence is relevant under Rule 404(b), however, the trial court may exclude such evidence under the Rule 403 balancing test. N.C. Gen. Stat. § 8C-1, Rule 403 states, in pertinent part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. § 8C-1, Rule 403 (1992). But, "exclusion of evidence under the Rule 403 balancing test is within the sound discretion of the trial court." *State v. Syriani,* 333 N.C. 350, 379, 428 S.E.2d 118, 133, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993), *reh'g denied,* 510 U.S. 1066, 126 L. Ed. 2d 707 (1994). Further, a trial court does not commit an abuse of discretion unless its "ruling is manifestly unsup-

ANDERSON v. TOWN OF ANDREWS

[127 N.C. App. 599 (1997)]

ported by reason or is so arbitrary it could not have been the result of a reasoned decision." *Id.* In this case, we conclude that the trial court's ruling was not arbitrary, and we therefore overrule this assignment of error.

No error.

Judges WYNN and SMITH concur.