STATE OF NORTH CAROLINA v. ELIZABETH MAGDELENE CLARK, A/K/A, ROBIN GOSNELL

No. COA99-646

(Filed 20 June 2000)

**1. Evidence— expert testimony—contradictions—resolved by jury**

Although a testifying witness did not use the same terms as contained in her autopsy report's finding of no "tonsillar herniation," the trial court did not err in a first-degree murder case by failing to intervene when the witness testified that the cause of

---

the minor victim's death was blunt force injury to the head because: (1) defendant did not object to or move to strike this testimony; and (2) any contradiction in the witness's testimony and her autopsy report was to be considered and resolved by the jury.

## 2. Jury— juror contact with victim's family—no further inquiry by trial court

The trial court did not abuse its discretion in a first-degree murder case by failing to conduct a further inquiry into a juror's possible contact with a member of the victim's family because: (1) the juror did not state any contact had taken place in violation of the trial court's instructions since the only information was that the juror attended church with a member of the victim's family; and (2) defendant did not object to the trial court's ruling or its failure to inquire further into the matter.

## 3. Evidence— photographs and slides—extent of victim's injuries

The trial court did not abuse its discretion in a first-degree murder case by admitting photographs and slides of the minor victim at the time of his death because: (1) the extent and cause of the minor victim's numerous injuries, as well as his cause of death, were directly at issue and not stipulated to by defendant; (2) the State had the burden of proving that the child's injuries were inflicted by defendant and were not the result of accidents; (3) the trial court conducted a voir dire examination of the photographs and slides before they were admitted and screened them for repetition; (4) the slides were projected onto a screen away from defendant; (5) the trial court gave limiting instructions that the photographs and slides were to be used only for illustrating and explaining the testimony of witnesses; and (6) none of the photographs were distributed to the jury.

## 4. Criminal Law— motion to poll jury—waiver

The trial court did not err in a first-degree murder case by failing to offer defendant an opportunity to poll the jury after the guilty verdicts were entered and in denying defendant's motion to poll the jury the next morning, because a defendant waives his right to poll the jury under N.C.G.S. § 15A-1238 once the jury leaves the courtroom after the verdict is returned, and defendant did not move to poll the jury prior to the recess.

**5. Criminal Law— requested instructions—accident**

The trial court did not err in a first-degree murder case by denying defendant's request for a jury instruction on the issue of an "accident" because: (1) if the jury believed defendant's argument, she would have been acquitted of the charges; and (2) the trial court's instruction on second-degree murder revealed that the State must prove beyond a reasonable doubt that the minor victim's injuries were inflicted intentionally and not by accident or misadventure.

**6. Homicide— first-degree murder—battered child—sufficiency of evidence**

The trial court did not err in a first-degree murder case by denying defendant's motions to dismiss because the State's circumstantial evidence was sufficient to reveal that the minor victim was a battered child who died as a result of injuries inflicted by defendant.

**7. Evidence— prior bad acts—child abuse—intent**

The trial court did not err in a first-degree murder case by admitting testimony of defendant's prior bad acts regarding her treatment of the minor victim because: (1) past instances of mistreatment are admissible to show intent in a child abuse case; (2) defendant's treatment of the minor victim was relevant to the charge of felony child abuse; and (3) defendant has failed to establish that the admission of this evidence was manifestly unsupported by reason.

Appeal by defendant from judgment entered 5 August 1998 by Judge Howard E. Manning, Jr., in Rowan County Superior Court. Heard in the Court of Appeals 29 March 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert J. Blum, for the State.*

*Nancy R. Gaines for defendant-appellant.*

WALKER, Judge.

Defendant was convicted of first degree murder upon perpetration of a felony, i.e. felonius child abuse, and was sentenced to life imprisonment without parole. The State's evidence tended to show the following:

The victim, Budde Lee Clark, born on 27 November 1990, was the son of Warren LeGrande Clark, a/k/a Lee Clark, and Pam Bradshaw,

**STATE v. CLARK**

[138 N.C. App. 392 (2000)]

who were not married. In April 1994, Lee Clark married the defendant, Elizabeth Magdelene Clark, a/k/a Robin Gosnell. Lee Clark, the defendant, and her two sons from a previous marriage, Christian Pittman and Sammy Bringle, lived together. Lee Clark obtained custody of Budde in March 1995, and Budde lived in their home from then until the time of his death on 31 January 1997.

Lee Clark testified that during this time he occasionally saw Budde with injuries to his nose, arm, foot, face and backside. Clark testified that defendant always had an explanation as to how the injuries occurred. Further, Clark testified that the day before the victim died, he observed defendant whipping Budde with a belt and he took the belt away from her. However, the defendant retrieved the belt and hit Budde several more times. Clark then saw red marks and bruises on Budde's legs.

The following morning, 31 January 1997, as Clark was leaving for work, he noticed a bruise on Budde's forehead that was not there the night before. Around 9 a.m., Clark called the defendant and asked her what happened to Budde's head. She explained that Budde had been injured while "playing Power Rangers."

Later that day, Budde was found in the bathtub lying on his side in approximately eight inches of water. Defendant's son, Sammy Bringle, found Budde, lifted him out of the tub, and called for his mother. Defendant attempted CPR and Sammy called 911. Emergency Medical Services was unable to revive Budde and he was pronounced dead on arrival at the Rowan Regional Medical Center. Clark further testified that he saw Budde's body at the hospital and saw "big bruises on his head," and that some of the bruises were not there when he left for work that morning.

Dr. Karen Chancellor, associate chief medical examiner for North Carolina, performed the autopsy and testified that a "blunt force injury of the head" was the cause of death. Dr. Chancellor identified approximately thirteen discrete injuries to the head, but could not identify which blow or blows to the head would have been fatal. She testified there were numerous injuries present on every part of his body, as well as evidence of blunt force trauma to the head, back, chest, arms, and legs. Also, there was evidence of two healing rib fractures. She also testified that Budde's injuries were consistent with battered child syndrome. Dr. Chancellor used autopsy photographs and slides to illustrate her testimony. Some of the slides were projected onto a screen for the jury to view.

Pam Bradshaw testified that prior to living with defendant, Budde was a very outgoing and rambunctious child, but that she had not observed him jumping off bunk beds or injuring his head jumping off furniture. She also testified that Budde was more quiet and timid after he began living with defendant and Lee Clark.

Dr. Marcia Herman-Giddens, an expert in the investigation and analysis of the circumstances of child fatalities, testified that a month before Lee Clark and defendant obtained custody of Budde, he was in the 75th percentile on a children's growth chart, and at the time of his death he had dropped to the 5th percentile. Her examination of the autopsy report revealed "muscle wasting," whereby a child suffers from malnutrition to the point where his muscle tissue begins to deteriorate. Dr. Herman-Giddens further testified that Budde evidenced a "failure to thrive," which is common in abusive and neglectful situations.

Phyllis Reep, a registered nurse, observed Budde's body in the emergency room. She testified there were numerous bruises and abrasions on his head and body and a large raised bluish hematoma near the center of his forehead. Photographs taken of Budde in the emergency room were used by Ms. Reep to illustrate her testimony.

Lisa Grass, the defendant's sister-in-law, testified how the defendant treated Budde. She stated that the defendant "talked hateful" to Budde "most of the time." Jaime Pittman, the defendant's daughter-in-law, also testified about defendant's treatment of Budde. Ms. Pittman lived with defendant and Lee Clark for a period of time and witnessed the defendant striking Budde with her hands and fist and kicking him. Additionally, she observed bruises on Budde and his being punished frequently by defendant. In her opinion, the reason he was treated so harshly was because he was not the defendant's biological son. Ms. Pittman also testified that she contacted the Department of Social Services about this, but that she did not personally intervene when the defendant was hitting Budde out of her fear of the defendant.

The defendant testified that Budde was a very active and rambunctious child who often injured himself while playing. She related how Budde would occasionally injure his head by "flipping" off of the bunk beds and that all of the bruises on his body were the result of accidents. She admitted that she spanked Budde with a belt, but that she did not spank him on the night prior to his death. Further, on the day of Budde's death, she ran water for him to take a bath and then went to use the phone and check her phone messages. She stated she

was not in the bathroom when Budde got in the tub. When her son Sammy came and told her that something was wrong with Budde, she ran to the bathroom and discovered Budde's body laying beside the bathtub. While Sammy called 911, she attempted to clear his air passages since she thought Budde had drowned. Defendant denied hurting or injuring Budde in any way that would have caused his death. Prior to his bath that morning, Budde acted like he did not feel well.

Christian Pittman, defendant's son, testified that Budde was very rambunctious and suffered bruises from climbing on bunk beds and jumping on a trampoline. Pittman testified he never observed defendant slap Budde's head or kick him, but that she did spank Budde for breaking her rules.

[1] Defendant first argues the State erred when it failed to correct false witness testimony offered by Dr. Chancellor when it contrasted with her written autopsy report. Dr. Chancellor's autopsy report stated there was "no evidence of uncal, cingulate or tonsillar herniation." However, defendant claims Dr. Chancellor's testimony described the victim's cause of death as "tonsillar herniation," although she never used the term in her testimony.

A prosecutor's presentation of known false evidence, allowed to go uncorrected, is a violation of a defendant's right to due process. *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221-22 (1959); *State v. Williams*, 341 N.C. 1, 16, 459 S.E.2d 208, 217 (1995). The State has a duty to correct any false evidence which in any reasonable likelihood could affect the jury's decision. *Id.* However, if the evidence is inconsistent or contradictory, rather than a knowing falsehood, such contradictions in the State's evidence are for the jury to consider and resolve. *State v. Edwards*, 89 N.C. App. 529, 531, 366 S.E.2d 520, 522 (1988); *State v. Joyce*, 104 N.C. App. 558, 565, 410 S.E.2d 516, 520 (1991), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992).

Dr. Chancellor testified that the cause of Budde's death was blunt force injury of the head. She described the specific mechanism of death, although she did not use the same terms as contained in her autopsy report's finding of no "tonsillar herniation." Defendant did not object to or move to strike this testimony. Any contradiction in her testimony and her autopsy report was to be considered and resolved by the jury and this argument is without merit.

[2] Next, defendant argues the trial court erred in failing to conduct an inquiry into Juror #7's possible contact with a member of the vic-

tim's family. During the morning recess after Pam Bradshaw's testimony, the following exchange took place outside the presence of the other jurors:

THE COURT: Bill. Rick. Nancy [first names of counsel for State and defendant]. This is Mr. Childers?

JUROR # 7: · Yes, sir.

THE COURT: If you'll speak up so she can get it.

JUROR # 7: Okay. I just found out that I go to church with [Pam Bradshaw's] uncle and I didn't know if that was—

THE COURT: Thanks for telling me. But that doesn't disqualify you.

JUROR # 7: Okay.

THE COURT: Thanks for letting us know.

JUROR # 7: All right. I just didn't want—

THE COURT: I appreciate it.

JUROR # 7: —you to find out later.

THE COURT: That's right. No problem. Thank you, sir.

JUROR # 7: Yes, sir.

The trial court did not conduct any further inquiry. Previously during the jury *voir dire*, Juror #7 stated that he attended high school with Pam Bradshaw 12 years earlier.

Whether alleged misconduct has affected the impartiality of a particular juror is a discretionary determination for the trial court. *See State v. Rutherford*, 70 N.C. App. 674, 677, 320 S.E.2d 916, 919 (1984), *disc. review denied*, 313 N.C. 335, 327 S.E.2d 897 (1985). Misconduct must be determined by the facts and circumstances of each case. *Id.* The trial court has the responsibility to make such investigations as may be appropriate, including examination of jurors when warranted, to determine whether misconduct has occurred and, if so, whether such conduct has resulted in prejudice to the defendant. *See State v. Williams*, 330 N.C. 579, 583, 411 S.E.2d 814, 817 (1992).

Here, there was no allegation of misconduct. Juror #7 did not state that any contact had taken place in violation of the trial

court's instructions. The only information brought to the trial court's attention was that Juror #7 attended church with Pam Bradshaw's uncle.

While the better practice is for the trial court to conduct a full *voir dire* hearing to ascertain the particular circumstances of the situation, *see State v. Selph*, 33 N.C. App. 157, 161, 234 S.E.2d 453, 456 (1977), under the circumstances of this case, the trial court did not abuse its discretion in failing to inquire further as to whether Juror #7 may have violated its instructions. We note that the defendant did not object to the trial court's ruling or its failure to inquire further into the matter.

**[3]** Next, defendant contends the trial court erred in admitting photographs and slides which were not accurate representations of the victim at the time of his death, were duplicative in nature, and were projected onto a screen "many times life size." Defendant relies on *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988), for the proposition that the trial court erred in allowing all of these photographs into evidence.

Photographs of the victim's body may be used to illustrate testimony as to the cause of death. *State v. Cummings*, 332 N.C. 487, 503, 422 S.E.2d 692, 701 (1992). Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury. *State v. Murphy*, 321 N.C. 738, 741, 365 S.E.2d 615, 617 (1988). Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each is within the trial court's discretion under a totality of the circumstances analysis. *See Hennis*, 323 N.C. at 285, 372 S.E.2d at 526. Abuse of discretion results where the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision. *Id.* Additionally:

The test for excess is not formulaic: there is no bright line indicating at what point the number of crime scene or autopsy photographs becomes too great. The trial court's task is rather to examine both the content and the manner in which photographic evidence is used and to scrutinize the totality of circumstances composing that presentation. What a photograph depicts, its level of detail and scale, whether it is color or black and white, a slide

or a print, where and how it is projected or presented, the scope and clarity of the testimony it accompanies—these are all factors the trial court must examine in determining the illustrative value of photographic evidence and in weighing its use by the state against its tendency to prejudice the jury.

*Hennis*, 323 N.C. at 285, 372 S.E.2d at 527 (internal citations omitted). Our Supreme Court has "rarely held the use of photographic evidence to be unfairly prejudicial . . . ." *State v. Kyle*, 333 N.C. 687, 702, 430 S.E.2d 412, 420-21 (1993) (*quoting State v. Robinson*, 327 N.C. 346, 357, 395 S.E.2d 402, 409 (1990)).

In *Hennis*, the defendant was convicted of three counts of first degree murder. The trial court admitted thirty-five autopsy and crime scene photographs and the duplicate slides were projected onto a screen just above the defendant's head. *Hennis*, 323 N.C. at 282, 372 S.E.2d at 525. Defendant stipulated to the victims' cause of death. *Id.* at 283, 372 S.E.2d at 526. The thirty-five 8x10 photographs were distributed to the jury, one at a time, and were unaccompanied without further testimony. *Id.* Many slides with repetitive content were admitted. *Id.* at 286, 372 S.E.2d at 527. Our Supreme Court held that the trial court prejudicially erred in admitting the photographs and slides. *Id.* at 287, 372 S.E.2d at 528.

The extent and cause of Budde's numerous injuries, as well as his cause of death, were directly at issue and not stipulated to by the defendant. To establish child abuse and murder, the State had the burden of proving that these injuries were inflicted by defendant and were not the result of accidents. The trial court conducted a *voir dire* examination of the photographs and slides before they were admitted and screened the photographs and slides for repetition, as did Dr. Chancellor. Approximately five were removed for repetitive content. Twenty slides were projected onto a screen which the record reveals was away from the defendant. Dr. Chancellor's testimony focused on the severity and timing of each of the numerous head and body injuries inflicted upon Budde. Additionally, she testified that the photographs and slides were accurate portrayals of Budde's body at the time she conducted the autopsy, which was the morning after Budde died, and that the photographs and slides would be helpful in illustrating her testimony. The trial court gave limiting instructions that the photographs and slides were to be used only for illustrating and explaining the testimony of witnesses. None of these photographs were distributed to the jury. Our review of the photographs and

slides confirms that the trial court did not err in admitting them into evidence.

**[4]** Next, defendant argues the trial court erred in failing to offer her an opportunity to poll the jury after the guilty verdicts were entered and in denying her motion to poll the jury the next morning.

Under N.C. Gen. Stat. § 15A-1238, "Upon motion of any party made after a verdict has been returned and before the jury has dispersed, the jury must be polled." N.C. Gen. Stat. § 15A-1238 (1999). In *State v. Black*, 328 N.C. 191, 400 S.E.2d 398 (1991), our Supreme Court held that the defendant waived his right to poll the jury, where the jury returned guilty verdicts and was given a thirty-minute recess and instructed not to discuss the case among themselves or with any other persons. The defendant did not move to poll the jury prior to the recess. *Id.* at 197, 400 S.E.2d at 402. The trial court denied the motion since the motion was not timely. Our Supreme Court, in holding that the jury had been "dispersed" within the meaning of N.C. Gen. Stat. § 15A-1238, stated that "once a juror leaves the courtroom after the verdict is returned and goes into the streets, despite her best efforts to shield herself, she still can be affected by improper outside influences." *Id.* at 198, 400 S.E.2d at 402.

Here, the jury returned its verdict at approximately 5:10 p.m. on 5 August 1998. Defendant did not request that the jury be polled. The trial court excused the jury for the day with instructions that the jurors refrain from discussing the case with anyone. The following morning, defendant requested a polling of the jury, which the trial court denied. Finding *Black* controlling, defendant's assignment of error is without merit.

**[5]** Next, the defendant contends the trial court erred in denying defendant's request for a jury instruction on the issue of accident.

In *State v. Willoughby*, 58 N.C. App. 746, 294 S.E.2d 407, *disc. review denied*, 307 N.C. 129, 297 S.E.2d 403 (1982), this Court held that jury instructions on accident were not required where the defendant's version of the story would, if believed by the jury, have resulted in his being found not guilty of second degree murder. In *Willoughby*, the defendant and the victim were swimming together and the victim died of drowning. *Id.* at 747, 294 S.E.2d at 408. The defendant was convicted of second degree murder, but argued that he did not touch the victim and was entitled to a jury instruction on accident. *Id.* This Court held:

We do not believe the court should have charged on accident. If [the victim] died as a result of an accidental drowning, it was an accident with which the defendant had nothing to do. The jury accepted the version of the incident in accordance with the State's evidence. This evidence showed the defendant committed murder. If the jury had accepted the defendant's version of the event, the jury should have found the defendant not guilty under the charge given to them by the court. It was not necessary for the court to charge on accident.

*Id.* at 748, 294 S.E.2d at 408.

The defendant argued that Budde was a rambunctious child who often injured himself through roughhousing and "flipping" off of bunk beds, and that all of his bruises and injuries were accidental. If the jury believed defendant's argument, then she would have been acquitted of the charges.

Furthermore, in its instruction on second degree murder, the trial court charged the jury that the State must prove beyond a reasonable doubt that Budde's injuries were "inflicted intentionally and not by accident or misadventure."

Based upon *Willoughby* and the jury instructions for second degree murder, the trial court did not err in denying defendant's request for an instruction on accident.

**[6]** Next, defendant argues the trial court erred in denying defendant's motion to dismiss at the close of the State's evidence and again at the close of all evidence.

On a defendant's motion to dismiss for insufficiency of the evidence, the trial court must consider "whether there is substantial evidence of each essential element of the offense[s] charged, or of a lesser included offense of that charged." *State v. Robbins*, 309 N.C. 771, 774, 309 S.E.2d 188, 190 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Scott*, 323 N.C. 350, 353, 372 S.E.2d 572, 575 (1988). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference. *State v. Wright*, 127 N.C. App. 592, 596-97, 492 S.E.2d 365, 368 (1997), *disc. review denied*, 347 N.C. 584, 502 S.E.2d 616 (1998). Further, if the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion even though the evidence may also support

reasonable inferences of the defendant's innocence. *Id.* at 597, 492 S.E.2d at 368.

Here, the State's evidence showed that Budde was a battered child and died as a result of injuries inflicted by the defendant. Although the State's case centered around circumstantial evidence, taken in the light most favorable to the State, it was sufficient to withstand the defendant's motions to dismiss.

[7] Next, defendant argues the trial court erred in admitting testimony of prior bad acts of the defendant regarding her treatment of Budde. Defendant contends the testimony concerning her discipline of Budde, the manner in which she spoke to Budde, along with testimony describing defendant as a "pushy person," was improperly admitted.

Character evidence may be admissible for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999). The list of permissible purposes is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime. *See State v. Hipps*, 348 N.C. 377, 404, 501 S.E.2d 625, 641 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 114 (1999). Even if admissible under Rule 404(b), the probative value of evidence must still outweigh the danger of undue prejudice to the defendant to be admissible under Rule 403. *See State v. Everhardt*, 96 N.C. App. 1, 18, 384 S.E.2d 562, 572 (1989), *affirmed*, 326 N.C. 777, 392 S.E.2d 391 (1990). The determination to exclude evidence on these grounds is left to the sound discretion of the trial court. *See State v. Anderson*, 350 N.C. 152, 175, 513 S.E.2d 296, 310, *cert. denied*, 528 U.S. 973, 145 L. Ed. 2d 326 (1999). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986); *State v. Mickey*, 347 N.C. 508, 518, 495 S.E.2d 669, 676 (citation omitted), *cert. denied*, 525 U.S. 853, 142 L. Ed. 2d 106 (1998). Our courts have consistently held that past incidents of mistreatment are admissible to show intent in a child abuse case. *See State v. Hitchcock*, 75 N.C. App. 65, 69-70, 330 S.E.2d 237, 240, *disc. review denied*, 314 N.C. 334, 333 S.E.2d 493 (1985); *State v. Vega*, 40 N.C. App. 326, 331, 253 S.E.2d 94, 97, *disc. review denied*, 297 N.C. 457, 256 S.E.2d 809, *cert. denied*, 444 U.S. 968, 62 L. Ed. 2d 382 (1979).

Here, since the defendant was charged with felony child abuse, her treatment of Budde was at issue and thus relevant. *See State v. West*, 103 N.C. App. 1, 9-10, 404 S.E.2d 191, 197-98 (1991) (stating that evidence of the way defendant had treated the child in the past was relevant where defendant was convicted of involuntary manslaughter and non-felonious child abuse). The defendant has failed to establish that the trial court's decision to admit this evidence was manifestly unsupported by reason and thus her assignment of error is overruled.

We have carefully examined defendant's remaining assignment of error and find it to be without merit. In sum, defendant received a fair trial free from prejudicial error.

No error.

Judges LEWIS and MARTIN concur.