IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-985

 Filed: 3 September 2019

Columbus County, Nos. 14CRS050013, 14CRS000008-9

STATE OF NORTH CAROLINA,

 v.

AMANDA KAY CANADY, Defendant.

 Appeal by defendant from judgments entered 28 March 2018 by Judge Douglas

B. Sasser in Columbus County Superior Court. Heard in the Court of Appeals 9 April

2019.

 Attorney General Joshua H. Stein, by General Counsel W. Swain Wood, for the
 State.

 Michael E. Casterline for defendant-appellant.

 BERGER, Judge.

 On March 28, 2018, Amanda Kay Canady (“Defendant”) was convicted of first

degree murder, assault with a deadly weapon with intent to kill inflicting serious

injury, and attempted first degree murder. Defendant appeals, arguing that the trial

court abused its discretion when it admitted several crime scene photographs into

evidence. Defendant claims the photographs were more prejudicial than probative,

and argues that, but for this error, there is a reasonable possibility that a different

result would have occurred at trial. We disagree, and find no error.

 Factual and Procedural Background
 STATE V. CANADY

 Opinion of the Court

 On December 31, 2013, Keshia Ward (“Ward”) and her fiancé, Johnny Lee

Tyler (“Tyler”), hosted a New Year’s Eve cookout at their home. After the cookout

and subsequent party had mostly concluded, in the early morning hours of January

1, 2014, a dispute arose over a cellular telephone. The cell phone was owned by

Derrick Pierce (“Pierce”) and had been left in Tyler’s truck. Pierce, who was at the

party with his associate Antwan Johnson (“Johnson”), had previously sold drugs to

Tyler. Tyler initially claimed that he did not know where the cell phone was, but he

eventually admitted that he had sold the phone.

 This confession led Johnson to grab Tyler and take him into the home. Pierce

and Johnson began beating Tyler once inside, with Johnson holding Tyler while

Pierce struck him in the face. Ward attempted to stop the beating of her fiancé, at

which point Defendant entered the home. Pierce instructed Defendant to “get her

ass, too.”

 Defendant then grabbed a baseball bat and began to beat Ward, continuing her

assault even as Ward fell to the floor. Defendant also swung the bat at Tyler, striking

him in the head. After several minutes of continuous beating, Tyler and Ward were

instructed to strip naked and perform sexual acts on one another. Throughout this

time, Tyler and Ward’s children were hiding in the back bedroom of the home. The

eldest, Delanee Chavis (“Chavis”), heard male voices instruct Defendant to “go check

on the kids.” Chavis then saw Defendant open the bedroom door, enter the room

 -2-
 STATE V. CANADY

 Opinion of the Court

holding a wooden leg of a barstool in her hand, look around, and then exit the room

closing the door behind her.

 The noise from the beatings eventually stopped, and Tyler heard someone say,

“They’re dead. Come on, let’s go.” Chavis heard someone say, “If y’all tell anybody,

I’ll kill y’all.” Chavis awoke later that morning to find Tyler naked, badly injured,

and asking for help. Chavis also saw Ward, her mother, naked and lying on the floor,

covered with a blanket. Tyler spent nearly three weeks in the hospital recovering

from his severe injuries. Ward died as a result of the injuries she had sustained

during the beating.

 Deputies from the Columbus County Sheriff’s Department responded to the

house the next day after Chavis had called family members seeking help. Deputy

Joseph Graham (“Deputy Graham”) found Tyler in the living room and Ward in a

bedroom near the front of the house. Deputy Graham observed blood on the walls,

floor, furniture, and throughout the house. The Chief Medical Examiner for the State

of North Carolina determined that Ward’s death was the result of blunt trauma

injuries to the head, chest, abdomen and extremities.

 That same day, Johnson showed one of his associates, Antonio Murdock

(“Murdock”), a video of the assault that he had recorded with his cell phone. In the

fifteen second video, Defendant, who was known to Murdock and recognized by him,

was sitting on top of another woman and swinging something at her head.

 -3-
 STATE V. CANADY

 Opinion of the Court

 In January 2017, Johnson pleaded guilty to second degree murder and

attempted first degree murder, and he agreed to testify at Defendant’s trial on behalf

of the State. Pierce was tried and convicted in June 2017.

 Defendant’s trial began on March 19, 2018. Before trial began, Defendant

conceded to being present at the crime scene on the day of the incident. Throughout

trial, Defendant consistently objected to the introduction of the many photographs of

the victims and the crime scene. Defendant asserted that the photographs were more

prejudicial than probative. To expedite this process, the trial court reviewed all of

the photographs in camera, and ruled on each photograph Defendant had objected to

during this process. Defendant objected to more than seventy of the photographs the

State was seeking to introduce into evidence, and the trial court sustained roughly

twenty objections to individual photographs.

 Defendant was convicted by the jury for three crimes: (1) first degree murder

of Ward under the three theories offered by the State—malice, premeditation and

deliberation; felony murder rule; and murder by torture; (2) assault with a deadly

weapon with intent to kill inflicting serious bodily injury on Tyler; and (3) attempted

murder of Tyler. In addition to her sentence of life imprisonment without parole for

the first degree murder conviction, Defendant was also sentenced to a term of 73 to

100 months for the Class C felony assault and 157 to 201 months for the attempted

murder. Defendant appeals.

 -4-
 STATE V. CANADY

 Opinion of the Court

 Analysis

 Defendant only asserts one argument here on appeal. She argues that her

conviction must be vacated, and a new trial granted, because the trial court erred in

allowing “an excessive number of bloody and gruesome photographs of the crime

scene” into evidence that “had little probative value” and were “unfairly prejudicial,”

pursuant to Rule 403 of the North Carolina Rules of Evidence. We disagree.

 Rule 403 states that: “Although relevant, evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence.” N.C. Gen. Stat. § 8C-

1, Rule 403 (2017).

 Whether to exclude relevant evidence under the Rule 403
 balancing test lies within the sound discretion of the trial
 court, and the trial court’s ruling should not be overturned
 on appeal unless the ruling was manifestly unsupported by
 reason or was so arbitrary that it could not have been the
 result of a reasoned decision.

State v. Lloyd, 354 N.C. 76, 98, 552 S.E.2d 596, 614 (2001) (purgandum).

 “Whether the use of photographic evidence is more probative than prejudicial

and what constitutes an excessive number of photographs in the light of the

illustrative value of each is within the trial court’s discretion under a totality of the

circumstances analysis.” State v. Clark, 138 N.C. App. 392, 399, 531 S.E.2d 482, 487

(2000).

 -5-
 STATE V. CANADY

 Opinion of the Court

 The test for excess is not formulaic: there is no bright line
 indicating at what point the number of crime scene or
 autopsy photographs becomes too great. The trial court’s
 task is rather to examine both the content and the manner
 in which photographic evidence is used and to scrutinize
 the totality of circumstances composing that presentation.

State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

 Photographs are usually competent to be used by a
 witness to explain or illustrate anything that it is
 competent for him to describe in words. Photographs are
 admissible to illustrate testimony concerning the manner
 of a killing in order to prove circumstantially the elements
 of first-degree murder. Even gory or gruesome
 photographs are admissible so long as they are used for
 illustrative purposes and are not introduced solely to
 arouse the jurors’ passions. When determining the
 admissibility of a photograph, the trial court should
 consider what a photograph depicts, its level of detail and
 scale, whether it is color or black and white, a slide or a
 print, where and how it is projected or presented, and the
 scope and clarity of the testimony it accompanies.

Lloyd, 354 N.C. at 98, 552 S.E.2d at 613-14 (purgandum).

 Here, Defendant contends that the court abused its discretion in admitting

roughly seventy photographs of the crime scene, arguing that “the sheer volume of

photographs prominently displaying blood was excessive and unnecessary to prove

the State’s case against [Defendant].” She further argues that the evidence served

no probative value and was “calculated to play to the jury’s emotions; to horrify the

jurors and incite them” in order to find Defendant guilty. Defendant focuses

specifically on nine photographs of the victim as she was found at the crime scene

and twelve more autopsy photographs. Defendant argues that this evidence did not

 -6-
 STATE V. CANADY

 Opinion of the Court

“contain any information to help the jury assess [Defendant’s] alleged role in [the

victim’s] death . . . [and that] the evidence should have focused on establishing

[Defendant’s] participation.” In allowing “the State to flood the jury with these

disturbing images, the trial court abused its discretion and prejudiced [Defendant].”

 However, the trial court admitted the photographs only after careful in camera

consideration of each photograph. Then, the trial court reviewed the photographs

again, allowing the State and Defendant to argue on the record over whether certain

photographs should or should not be admitted. The trial court, after hearing

arguments on individual photographs sustained several of Defendant’s objections,

because it found that the evidence was either cumulative or unnecessary. The trial

court admitted several other photographs, over the objection of Defendant, concluding

that those photographs showed unique aspects of the crime scene or the victims’

injuries. There were different categories of photographs that were introduced: crime

scene and clothes; Tyler’s injuries; Ward’s body at the crime scene; the bedroom where

Ward was found; and autopsy photographs.

 The ruling of the trial court was not “manifestly unsupported by reason or [ ]

so arbitrary that it could not have been the result of a reasoned decision.” Lloyd, 354

N.C. at 98, 552 S.E.2d at 614. The admission of each photograph was a thoroughly

reasoned decision. Each photograph was reviewed and discussed. Defendant does

not even argue which specific photographs should have been excluded, only that the

 -7-
 STATE V. CANADY

 Opinion of the Court

photographs, cumulatively, were prejudicial. As stated previously, it is “[t]he trial

court’s task . . . to examine both the content and the manner in which photographic

evidence is used and to scrutinize the totality of circumstances composing that

presentation. Hennis, 323 N.C. at 285, 372 S.E.2d at 527. The trial court completed

its task here.

 Furthermore, Defendant is unable to show that the admission of the

photographs, cumulatively, was prejudicial because of the other overwhelming

evidence of Defendant’s guilt. Defendant stipulated that she was present in Tyler

and Ward’s home at the time these crimes were committed. Tyler, Chavis, and

Murdock testified to Defendant’s involvement in the murder, assault, and attempted

murder in which two victims were savagely beaten. The photographs allowed into

evidence in this case illustrated the testimonies that proved this to the jury, and the

photographs were properly allowed into evidence by the trial court.

 Conclusion

 For the reasons stated above, the trial court did not err in allowing the State

to introduce photographic evidence of Defendant’s crimes. She received a fair trial,

free from error.

 NO ERROR.

 Chief Judge MCGEE and Judge TYSON concur.

 -8-