STATE OF NORTH CAROLINA v. ROGER DALE BROOKS

No. COA98-1576

(Filed 21 December 1999)

**1. Homicide— first-degree murder—defendant as perpetrator—sufficiency of evidence**

The trial court did not err in a homicide case by failing to dismiss the charge of first-degree murder based on insufficient evidence to show that the victim's assault was committed by defendant because taken in the light most favorable to the State: (1) it is a logical deduction that defendant went to the victim's place of business for money, as he had many times before; (2) in conjunc-

tion with the evidence showing motive and opportunity, a reasonable inference could be drawn that defendant made false statements in an effort to exculpate himself; and (3) the evidence was substantial, creating more than a suspicion as to the element that defendant was the perpetrator of the crime.

## 2. Homicide— second-degree murder—lesser included offense—state of mind

The trial court did not err in a homicide case by submitting the lesser included offense of second-degree murder as a possible jury verdict because it is not unreasonable to conclude that a rational trier of fact could find that defendant lacked the requisite state of mind to be convicted of first-degree murder when the evidence tends to establish that defendant had been drinking heavily and smoking crack cocaine for several hours before committing the murder.

## 3. Constitutional Law— speedy trial—estoppel—burden to show State negligently or willfully delayed

The trial court did not err in a homicide case by denying defendant's pretrial motion to dismiss on the grounds that his right to a speedy trial was violated under the Sixth and Fourteenth Amendments when his trial began approximately twenty-eight months after he was indicted because: (1) defendant is estopped from requesting a speedy trial for at least twelve of the twenty-eight months when the record reflects his continued requests for new court-appointed counsel and his failure to accept four of the five counsel appointed to him; and (2) for the remaining sixteen-month delay, defendant has failed to meet his burden of showing that the State negligently or willfully delayed the trial when defendant's uncooperativeness had been a contributing factor, and even though the most prejudicial fact in the claim was that defendant was still in jail, none of defendant's prior four attorneys had requested bond.

## 4. Sentencing— mitigating factors—not found—sentence within presumptive range

The trial court did not err in a homicide case by sentencing defendant for second-degree murder without finding mitigating factors because the trial court sentenced defendant within the presumptive guidelines for his offense, and therefore, findings of mitigating or aggravating factors were not required.

Appeal by defendant from judgment entered 11 March 1998 by Judge J. Marlene Hyatt in Lincoln County Superior Court. Heard in the Court of Appeals 19 October 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General G. Patrick Murphy, for the State.*

*Brenda S. McLain for defendant-appellant.*

HUNTER, Judge.

Roger Dale Brooks ("defendant") appeals his conviction for the second degree murder of Lee Thornburg ("Thornburg") who died of massive head trauma on 1 October 1995. Defendant assigns error to the trial court in its: (1) failure to dismiss the charge of first degree murder at the close of all the evidence due to insufficient evidence presented to show that Thornburg's assault was committed by defendant; (2) denial of defendant's pretrial motion to dismiss on the grounds that his right to a speedy trial was violated under the Sixth and Fourteenth Amendments of the United States Constitution; (3) submission of second degree murder as a possible jury verdict due to the lack of evidence presented which negated premeditation and deliberation; and (4) sentencing defendant without finding mitigating factors. We find no error.

Evidence at trial tended to show that on 17 August 1995, defendant had been drinking vodka since approximately 7:30 a.m. at his mother's home. Later that morning, he cashed his paycheck, purchased a 12-pack of beer and went to his friend Crawley's house—only minutes away from Thornburg's machine shop, in an area which locals called "uptown"—where he continued drinking beer and wine and smoking crack cocaine throughout the day. Defendant used the remainder of his paycheck to purchase the crack cocaine.

About 2:00 p.m., defendant left Crawley's house stating that he had spent all his money on crack cocaine and he was going to get more money. Defendant returned between 5:00-6:00 p.m. with blood covering his shirt. When asked what happened, defendant said two black men jumped him and busted his nose. After changing shirts, defendant left again and upon returning brought with him more crack cocaine than he had purchased earlier with his paycheck.

Later that night, defendant returned home to his mother's house wearing a different t-shirt from the one he had left home in that morning. Defendant told his daughter's boyfriend that he had been in a

fight "uptown." "Somebody jumped him from behind" and "he knocked [the] man down and got on top of him and beat him in the head" but the man "wouldn't die." Defendant then proceeded to put his shoes and jeans in the washer and pour bleach over them, saying he had to wash out drops of blood. However, the next morning, defendant told his mother it was not blood, but vomit on his clothes; and when she pulled defendant's clothes from the dryer, she noted that his jeans had bleach blotches on them.

On 17 August 1995 about 7:50 p.m., Thornburg was found, by his sister and brother-in-law, unconscious with his head bludgeoned and lying in a pool of blood in his machine shop. He died on 1 October 1995 without ever regaining consciousness. Evidence was offered by the State, and uncontradicted by defendant, that Thornburg was assaulted before 5:50 p.m., the time his sister went to the machine shop to deliver dinner and was unable to get in.

Upon obtaining an arrest warrant for defendant on 24 August 1995, Detective Robert Hallman brought defendant back to the police station and advised him of his rights. Detective Hallman further advised defendant of his conversations with several people, including statements made that defendant had been seen at Crawley's house with blood on him; that defendant had washed his clothes that same night when he arrived home; and, that defendant had said "he beat a man in the head and he would not die." Defendant responded to Detective Hallman by stating, "Yes, sir, I told you that. It sounds overwhelming. Go ahead and serve the warrant. I want to talk to a lawyer."

On 31 August 1995, SBI Agent Brian Delmas, a latent fingerprint specialist, processed the crime scene looking for footwear impressions observed by officers during the initial crime scene search where Thornburg was assaulted. Using amido black, a chemical which reacts with protein and hemoglobin to stain blood making it visible to the naked eye, Agent Delmas was able to lift, photograph and enhance footwear impressions left at the crime scene. These impressions were not clear enough to make an identical match with defendant's shoes; however, they were consistent in sole design, size, shape, and general wear as the Rugged Outback right shoe taken from defendant at the time of his arrest. The State presented additional evidence showing that none of the law enforcement officers, emergency medical service providers or Thornburg's sister and brother-in-law had on shoes with a sole design similar to defendant's right shoe.

Additional evidence presented tended to show that Major Jerry Hallman of the Lincolnton Police Department secured the crime scene from the time the body was discovered on 17 August through 31 August 1995 when the footwear impressions were taken. The director of 911 communications for Lincoln County testified that there was only one assault reported on 17 August 1995, and that call came from Thornburg's place of business.

Defendant was indicted on 9 October 1995 and the case went to trial on 2 March 1998 (twenty-eight months later). Between 14 November 1995 and 11 September 1996, defendant went through four court-appointed attorneys and yet continued to demand that the court appoint another. Defendant requested an attorney from outside of Lincoln or Cleveland counties suggesting, without reason, that all attorneys in those counties would have a conflict of interest with his case. It was defendant's fifth court-appointed attorney ("Mr. Teddy") who carried the case to trial.

[1] Defendant's first assignment of error is that his motion to dismiss the charge of first degree murder was erroneously denied by the trial court. We disagree.

First degree murder is the unlawful killing of a human being with malice and with premeditation and deliberation. N.C. Gen. Stat. § 14-17 (1994). There are several elements necessary to establish a *prima facie* case. However, in the case *sub judice*, because defendant argues only that the State's evidence lacked any showing that defendant committed the crime, that is the only element with which this Court will concern itself.

Our Supreme Court has long held that in order to withstand a defendant's motion to dismiss, the State must present

> substantial evidence of each essential element of the offense charged and substantial evidence that the defendant is the perpetrator. . . .
>
> In ruling on the motion to dismiss, the trial court must view all of the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor. The trial court need not concern itself with the weight of the evidence. In reviewing the sufficiency of the evidence, the question for the trial court is whether there is "any evidence tending to prove guilt or which reasonably leads to this conclusion as

a fairly logical·and legitimate deduction." Once the court decides a reasonable inference of defendant's guilt may be drawn from the evidence, "it is for the jurors to decide whether the facts satisfy them beyond a reasonable doubt that the defendant is actually guilty."

*State v. Cross*, 345 N.C. 713, 716-17, 483 S.E.2d 432, 434-35 (1997) (citations omitted).

Therefore, the ultimate question for the Court is whether a reasonable inference of the defendant's guilt may be drawn from the evidence presented at trial. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). If a reasonable inference of defendant's guilt may be inferred from the evidence, his motion to dismiss should be denied. However if, upon consideration of all the evidence, only a suspicion of guilt is raised, then the evidence is insufficient, and the motion to dismiss should be granted. *State v. Wilson*, 345 N.C. 119, 125, 478 S.E.2d 507, 511 (1996).

It is uncontroverted that the State has indeed raised a suspicion of defendant's guilt. In fact, several witnesses, including defendant's own mother, questioned whether defendant had something to do with Thornburg's murder. However, suspicion alone is not enough. In *State v. Johnson*, 199 N.C. 429, 154 S.E. 730 (1930), North Carolina's then Chief Justice Stacy wrote:

> It is sometimes difficult to distinguish between evidence sufficient to carry a case to the jury, and a mere scintilla, which only raises a suspicion or possibility of the fact in issue. The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.

*Id.* at 431, 154 S.E. at 731 (citations omitted).

In the case at bar, the State presented evidence that Thornburg probably knew his assailant, that Thornburg knew defendant, that defendant had many times borrowed money from Thornburg and pawned his mother's things to Thornburg without his mother's permission, that Thornburg had a note on his desk stating "Brooks" owed him money, that no one was with defendant around the time Thornburg was murdered, and that a right shoe print found at the crime scene was consistent in sole design, size, shape and general

wear as the right shoe defendant was wearing at the time of his arrest. We find it a logical deduction that defendant again went to Thornburg for money as he had many times before.

Further, the State presented uncontroverted evidence that on the day of the murder defendant spent his entire paycheck on beer and crack cocaine before the time of the murder and that after the time of the murder, defendant not only came back to Crawley's house with more cocaine than he had purchased at the beginning but also with his shirt covered in blood. Additionally, three witnesses testified to different stories told them by defendant regarding the blood on his clothes; one of which was that defendant had been in a fight "uptown" and had "beat a man in the head" but the man "wouldn't die." In conjunction with the evidence showing motive and opportunity, this Court holds that a reasonable inference could be drawn that defendant made false statements in an effort to exculpate himself. *State v. Marion*, 200 N.C. 715, 719, 158 S.E. 406, 407-08 (1931).

Defendant argues that because the State's expert was unable to definitively find "unique identifiable characteristics" in the print to match with defendant's shoe, the print was unreliable. He further contends that the print along with the State's other evidence were "too tenuous and speculative to have justified submitting the case to the jury." We disagree.

The record before this Court reveals that defendant neither argues now nor preserved at trial the right to argue that the submission of the shoe print to the jury was erroneous. Had this been his contention, this Court would have been required to "determine whether the *Palmer* 'triple inference' test ha[d] been met." *State v. Ledford*, 315 N.C. 599, 611, 340 S.E.2d 309, 317 (1986). *See also State v. Palmer*, 230 N.C. 205, 213, 52 S.E.2d 908, 913 (1949). Instead, this Court must determine only whether the print along with all the other evidence combined is sufficient to support defendant's conviction. *State v. Ledford*, 315 N.C. 599, 340 S.E.2d 309.

Taken in the light most favorable to the State, we conclude that the evidence set out above against defendant was substantial, creating more than a suspicion as to the element that defendant was the perpetrator of the crime. Thus, it was a question for the jury to decide. *State v. Marion*, 200 N.C. 715, 719, 158 S.E. 406, 407-08. Therefore, we find the trial court properly denied defendant's motion to dismiss.

STATE v. BROOKS

[136 N.C. App. 124 (1999)]

**[2]** Defendant's second assignment of error is that the trial court erred in submitting murder in the second degree as a possible jury verdict. Again, we disagree.

North Carolina law has long settled that a jury instruction of a lesser included offense is required "if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and acquit him of the greater." *State v. Gary*, 348 N.C. 510, 524, 501 S.E.2d 57, 67 (1998). The test is whether there "is the presence, or absence, of any evidence in the record which might convince a rational trier of fact to convict the defendant of a less grievous offense." *State v. Wright*, 304 N.C. 349, 351, 283 S.E.2d 502, 503 (1981).

In the case at bar, the evidence tends to establish that at the time the murder was committed, defendant had been drinking heavily and smoking crack cocaine for several hours. It is not unreasonable then that a rational trier of fact could find that defendant lacked the requisite state of mind—that is, the necessary specific intent of premeditation and deliberation—for first degree murder. In *State v. Mash*, 323 N.C. 339, 372 S.E.2d 532 (1988), the defendant there, as here, had been seen heavily drinking for several hours before the assault. Witnesses described him as obviously drunk or high, just as in the case at bar. There, our Supreme Court ruled it was proper for the jury to be instructed as follows:

> "[I]f upon considering the evidence with respect to the defendant's intoxication you have a reasonable doubt as to whether the defendant formulated the specific intent required for a conviction of first degree murder, you will not return a verdict of first degree murder. You will then consider whether or not he would be guilty of second degree murder."

*Id.* at 344, 372 S.E.2d at 535 (citation omitted). The Court went on to explain that:

> While there is some evidence to the contrary, when viewed in the light most favorable to defendant, the evidence of [this] defendant's state of intoxication is enough to require the voluntary intoxication instruction.

*Id.* at 348, 372 S.E.2d at 538. Accordingly, due to defendant's voluntary intoxication, we find the trial court's instruction of second degree murder was proper.

[3] Regarding defendant's assertion that he was denied his Sixth and Fourteenth Amendment rights to a speedy trial, we find this argument to be meritless.

The record shows that over the course of the first year, defendant was appointed five attorneys, four of which defendant requested be removed although the court found one not to have received actual notice of appointment for almost two months. Defendant's third attorney, Ms. Killian, whom he "fired" four times, finally petitioned the court to allow her to withdraw. Additionally, while defendant was represented by the first four attorneys, he continued to file *pro se* motions with the court. Mr. Teddy, the attorney who finally represented defendant at trial, was defendant's fifth court-appointed attorney.

In *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101 (1972), the United States Supreme Court outlined the four factors to be considered when a defendant claims his right to a speedy trial has been violated: (1) length of delay; (2) reasons for delay; (3) defendant's assertion of his right to a speedy trial; and (4) the prejudice to defendant resulting from the delay. In considering these factors, the court noted that they must be considered together, and that the different factors and the reason for the delay may be weighed differently.

In this light, defendant's own actions must be considered with regard to the length and reason for delay. Out of the approximately twenty-eight months it took for defendant's case to come to trial, twelve months were spent by him firing his court-appointed attorneys (from indictment on 9 October 1995 until Mr. Teddy was appointed on 24 September 1996).

During that time but never after, defendant twice motioned the court for a speedy trial; however, both were *pro se* motions even though defendant had counsel. The first motion came between his second and third firings of Ms. Killian. Defendant's second motion was filed as part of his complaint that he was not getting effective assistance of counsel. We therefore, find defendant's complaint of lack of a speedy trial was fallacious because he wanted court-appointed counsel but refused to accept any counsel appointed to him at the time. Without defendant asserting his right to proceed *pro se*, a claim that his right to a speedy trial was violated is untenable. The record clearly reflects defendant's continued requests for new court-appointed counsel. We hold that defendant is estopped from requesting a speedy trial while not accepting the counsel

appointed to him. Therefore, that delay of time is excludable from consideration. *Id.*

However, we now analyze the remaining delay period. In determining whether defendant was prejudiced by the remaining sixteen-month delay, the burden is placed on the defendant to show that he was, in fact, prejudiced. *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101. Where the defendant presents a *prima facie* case showing the delay to be directly attributable to the State's negligence or willfulness, the burden then shifts to the State to show that the delay (or periods of the delay) were excludable. *State v. Pippin*, 72 N.C. App. 387, 324 S.E.2d 900 (1985).

At the pre-trial hearing, Mr. Teddy asserted that the State had not been forthcoming with his discovery requests. However, he admitted that the blame could not solely be laid on the State, that his client's uncooperativeness had been a contributing factor. Further, Mr. Teddy found that the most prejudicial fact in the speedy trial claim was that defendant was still in jail. However, Mr. Teddy again readily admitted that none of defendant's attorneys before him had requested bond. At that hearing, upon Mr. Teddy's request, defendant was released on bond to await trial. We find that defendant has failed to meet his burden of showing that the State negligently or willfully delayed trial. Thus, the defendant's claim is without merit. *Id.*

**[4]** Defendant's final assignment of error is based on the trial court's failure to find that certain mitigating circumstances existed and thus should have lowered his sentence. Under N.C. Gen. Stat. § 15A-1340.16(a), a trial court's consideration of mitigating or aggravating circumstances in light of the presumptive sentence is discretionary, "and the offender bears the burden of proving by a preponderance of the evidence that a mitigating factor exists." N.C. Gen. Stat. § 15A-1340.16(a) (1997).

Our courts have long held that "the trial court must consider all mitigating and aggravating factors before imposing a sentence *other than* the presumptive term." *State v. Green*, 101 N.C. App. 317, 322, 399 S.E.2d 376, 379 (1991) (citation omitted) (emphasis added). "Nevertheless, where the trial court imposes sentences within the presumptive range for all offenses of which defendant was convicted, he is not obligated to make findings regarding aggravating and mitigating factors." *State v. Rich*, 132 N.C. App. 440, 452-53, 512 S.E.2d 441, 450 (1999). In the case at bar as in *Rich*, the trial court sentenced defendant within the presumptive guidelines for his offense; there-

RICHARDSON v. UNION COUNTY BD. OF ADJUST.

[136 N.C. App. 134 (1999)]

fore, no findings of mitigating or aggravating factors were required. Thus, there was no abuse of discretion as to the trial court's sentencing of defendant.

No error.

Judges GREENE and WALKER concur.