STATE OF NORTH CAROLINA v. KEITH BUTLER

No. COA00-999

(Filed 6 November 2001)

**1. Search and Seizure— cocaine—suspicious behavior in bus terminal**

There was no plain error in a prosecution for possessing and trafficking in cocaine in the court's failure to suppress the cocaine on its own motion where there was sufficient evidence from which a trained narcotics officer could form a reasonable, articulable suspicion that defendant may have been involved in criminal activity on the basis of identifiable behaviors that are usually associated with drug couriers as opposed to law abiding citizens. Officers were observing passengers arriving at a bus terminal from New York City, a source city; defendant, carrying a single bag, paused, stopped, and turned around to look directly at the officers on more than one occasion; defendant walked very briskly through the terminal, continually looking over his shoulder at the officers, although no one was in the terminal to meet him; defendant appeared very nervous; and an officer observed defendant hurriedly instructing a cab driver to "go, go, go," even though defendant observed the officers following him.

**2. Indictment and Information— fatal variance with verdict—amount of cocaine**

There was no fatal variance between the indictment and the verdict where the indictments were for cocaine trafficking by

transporting 28 to 300 grams and cocaine trafficking by possessing 28 to 300 grams, while the verdicts did not specify the amounts. Defendant had stipulated at trial that the amount was 83.1 grams and the trial court had instructed the jury that the amount was 83.1 grams.

**3. Drugs— constructive possession—taxi**

The trial court did not err by refusing to dismiss cocaine trafficking charges for insufficient evidence where an officer testified at length regarding defendant's suspicious behavior as he departed a bus from New York City, a "source city" for cocaine; defendant was nervous and excited as he entered a cab and attempted to leave as officers approached; defendant exited the cab in a suspicious manner, "struggling" behind the driver's seat with his arms and hands not visible to officers; defendant was the first fare of the day and the driver had cleaned the cab right before defendant entered it; there was a passenger between defendant's exit from the cab and the search, but that passenger sat on the other side of the back seat and made no movement toward or behind the driver's seat; and only about ten minutes passed between defendant exiting the cab and the discovery of the drugs.

**4. Sentencing— statement by court—explanation of consecutive sentence**

The trial court did not abuse its discretion when sentencing defendant for trafficking in cocaine by possession and transportation by stating its reason for not consolidating the sentences. Nothing in N.C.G.S. § 15A-1334(b), which concerns statements at sentencing, precludes a trial court from explaining to a defendant why a consecutive or concurrent sentence would be imposed. Moreover, consecutive sentences are well within the court's discretion.

Judge TYSON dissenting.

Appeal by defendant from judgments entered 29 October 1998 by Judge Abraham Penn Jones in Wake County Superior Court. Heard in the Court of Appeals 15 August 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Claud R. Whitener, III, for the State.*

*John T. Hall for defendant-appellant.*

HUNTER, Judge.

Keith Butler ("defendant") appeals from convictions of trafficking cocaine by transportation and trafficking cocaine by possession in violation of N.C. Gen. Stat. § 90-95 (1999). We find no error.

The evidence presented at trial tended to establish that on 20 January 1998, Raleigh police officers assigned to the Drug Interdiction Unit of the Drug Task Force, as well as officers of the State Bureau of Investigation, were monitoring the city's bus terminals. Officer D.C. Murphy of the Interdiction Unit testified that the officers were watching for buses arriving from or traveling to "source cities" where drugs are prevalent. Officer Murphy testified that the officers generally observe disembarking passengers, including whether the passengers have little or no luggage; their demeanor and how they react upon seeing the officers; whether they appear nervous; and whether they look around or behind themselves often even though no one is at the terminal to meet them.

At approximately 9:30 a.m., the officers were observing a bus arriving from New York City and traveling to Miami, both of which are considered "source cities." Officer Murphy testified that he saw defendant exit the bus carrying a single bag and walk towards the first set of double doors in the terminal. As defendant reached the doors, he "stopped, turned around, paused for a minute and then walked in quickly." Officer Murphy testified that defendant looked directly at the officers, making eye contact right before he walked through the terminal. As defendant walked through the terminal, the officers observed him "turn[ing] around several times looking behind him" and making eye contact with the officers. Defendant was walking "very briskly," and as he approached the doors to exit the terminal, he "paused and looked back again," making eye contact with the officers.

Defendant then left the terminal and got into a taxicab parked approximately two feet from the terminal doors, just as the officers were exiting the terminal behind him. The cab was being driven by Christopher Thomas ("Thomas"). Defendant sat directly behind Thomas' driver's seat. Thomas' window was down, and Officer Murphy told Thomas to "hold on just a second." As he approached the cab, Officer Murphy observed defendant "making motions with his hands to go on" and telling Thomas to "go, go, go several times." Thomas testified that defendant slammed the cab door when he

entered the cab and continued to say "let's go, let's go, let's go" in a "frightened" voice.

The officers approached the cab and identified themselves as police officers. Officer Murphy stated that defendant was "very nervous, fidgety." The officers asked defendant if they could speak with him for a few minutes, and defendant agreed. As defendant began to exit the vehicle, Officer Murphy noticed that he was "very slow getting out and bent over to where you could see just barely the top of his head and part of his shoulder," but not his hands. Thomas testified that he felt defendant "struggling" behind his seat right before defendant opened the cab door. Thomas stated that he did not "know what [defendant] was doing," but he could feel defendant "pushing the back of [his] seat" and "could feel the force on the back of [the] seat." Defendant then exited the cab and immediately walked away from the cab, going towards the front doors of the terminal. The officers had to follow defendant away from the cab in order to speak with him.

The officers asked defendant some questions, during which time he appeared "very nervous" and "his hands were shaking." Defendant consented to a search of his person and the bag he was carrying. The search did not uncover any illegal substances, and the officers allowed defendant to leave the terminal.

In the meantime, another man entered Thomas' cab, looking for a ride a few blocks away. Thomas knew the man, and had given him several cab rides previously. Thomas testified that the passenger was seated behind the front passenger seat, the opposite side from which defendant sat. Thomas testified that the passenger stayed behind the front passenger seat, and at no time did the passenger move over to where defendant had sat, or make any leaning motions behind Thomas' seat or to the floor of the cab. After dropping off the passenger, Thomas immediately returned to the bus terminal, approximately ten minutes after he left. The officers approached Thomas' cab and asked if they could search the vehicle. Thomas consented to a search which lead to the discovery of cocaine in a package underneath the driver's side seat, in front of where defendant had been seated.

Thomas testified that defendant was the first person in his cab that morning, and that he cleaned the cab right before picking up defendant. Thomas testified that he did not observe anything under his driver's seat other than the usual cigarette butts and lint. Officer

Murphy testified that the cab was "extremely clean" and that he observed "vacuum marks" indicating that the cab had been vacuumed recently. Defendant was apprehended near the bus terminal.

Defendant was tried at the 26 October 1998 Criminal Session of Wake County Superior Court on charges of trafficking cocaine by transportation and trafficking cocaine by possession in violation of N.C. Gen. Stat. § 90-95. On 29 October 1998, defendant was found guilty on both counts and was sentenced to two consecutive terms of thirty-five to forty-two months' imprisonment. Defendant appeals.

Defendant makes four arguments on appeal: (1) the trial court committed plain error in failing to suppress the cocaine evidence recovered from the taxicab; (2) the trial court erred in denying defendant's motion to set aside the verdicts based on a variance between the indictments and the verdicts; (3) the trial court erred in denying defendant's motion to dismiss the charges for insufficient evidence; and (4) the trial court erred in sentencing defendant "in a manner not authorized by law." After careful review, we hold that defendant received a fair trial.

A. Motion to Suppress

**[1]** Defendant first argues that the trial court committed plain error in failing to suppress, on its own motion, the cocaine evidence recovered from the taxicab. Specifically, defendant argues that the evidence should have been suppressed because the officers did not have probable cause to detain defendant both inside and outside the cab.

Defendant failed to move to suppress the evidence at trial, or otherwise object; therefore, the issue is under plain error review. *See State v. Hardy*, 353 N.C. 122, 131, 540 S.E.2d 334, 342 (2000). Our standard of review under plain error is whether

> "it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial." ' "

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (emphasis omitted) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted)).

We first note that the officers' questioning and subsequent search of defendant were pursuant to defendant's consent, and the search of the taxicab was executed pursuant to Thomas' consent. Thus, the only question here is whether the officers violated defendant's constitutional rights when they initially approached defendant for questioning. We further note that this issue is determined based upon the evidence known to the officers leading up to and at the time that they approached defendant for questioning. The issue of whether there exists sufficient evidence from which a jury could conclude that defendant possessed the drugs is appropriately considered in connection with defendant's motion to dismiss, addressed in part C of this opinion.

The United States Supreme Court has not concluded that all contact between citizens and police in the course of an investigation is subject to the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 34, 20 L. Ed. 2d 889, 913 (1968) (White, J., concurring) ("[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets"). Indeed, the Court has repeatedly held that the Fourth Amendment does not inhibit voluntary interaction between police and citizens. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 488, 29 L. Ed. 2d 564, 595, *reh'g denied*, 404 U.S. 874, 30 L. Ed. 2d 120 (1971) ("it is no part of the policy underlying the Fourth . . . Amendment[] to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals"). The Court stated in *Terry* that, "[o]bviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred," thus invoking the Fourth Amendment. *Terry*, 392 U.S. at 19 n.16, 20 L. Ed. 2d at 905 n.16.

In this case, there is no evidence that defendant expressed to the officers that he did not wish to answer their questions. Even assuming, *arguendo*, that the officers detained or "seized" defendant by instructing Thomas to "hold on just a second," we find no violation of defendant's constitutional rights. "It has long been the law that '[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' " *State v. McDaniels*, 103 N.C. App. 175, 181-82, 405 S.E.2d 358, 362 (1991) (quoting *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617 (1972)) (holding as factors justifying investi-

gatory stop prolonged eye contact with officers, nervousness, and walking at a rapid pace), *affirmed*, 331 N.C. 112, 413 S.E.2d 799 (1992).

" 'While the court has recognized that in some circumstances a person may be detained briefly without probable cause to arrest him, any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.' " *State v. Hendrickson*, 124 N.C. App. 150, 154-55, 476 S.E.2d 389, 392 (1996) (quoting *Reid v. Georgia*, 448 U.S. 438, 440, 65 L. Ed. 2d 890, 893-94 (1980)), *appeal dismissed and disc. review denied*, 346 N.C. 273, 485 S.E.2d 45 (1997). The reasonable and articulable suspicion standard " 'requires that the court examine both the articulable facts known to the officers at the time they determined to approach and investigate the activities of [defendant], and the rational inferences which the officers were entitled to draw from those facts.' " *Id.* at 155, 476 S.E.2d at 392 (quoting *State v. Casey*, 59 N.C. App. 99, 107, 296 S.E.2d 473, 478 (1982)).

"The circumstances leading to the seizure 'should be viewed as a whole through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *Id.* (quoting *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779), *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979). "A trained narcotics agent forms a reasonable, articulable suspicion that an individual is a drug courier on the basis of identifiable behaviors that are usually associated with drug couriers as opposed to law abiding citizens." *Id.*

Here, Officer Murphy, a seven-year veteran of the Drug Task Force, testified about his extensive experience and training in the apprehension of drug criminals. Officer Murphy testified that in this case, the officers were observing passengers coming from New York City, a "source city," for suspicious behavior. Officer Murphy testified in detail regarding the factors the officers are trained to observe, including a person's overall demeanor, how a person reacts to seeing the officers in the terminal, indications of nervousness, and whether a person repeatedly looks behind themselves or at the officers.

The evidence presented here is similar to that of *State v. Sugg*, 61 N.C. App. 106, 300 S.E.2d 248, *disc. review denied*, 308 N.C. 390, 302 S.E.2d 257 (1983). In *Sugg*, the police officer saw the defendant disembark from a commercial airline flight ". . . 'connect[ing] to Florida source cities' " considered points of entry for narcotics smuggling. *Id.*

at 110, 300 S.E.2d at 251. The officer observed the defendant exit the plane and " 'scan[]' " the area, making eye contact with the officer. *Id.* The officer noticed that the defendant carried only a briefcase and appeared to be nervous. *Id.* The defendant met with another man and then left the terminal hurriedly, "frequently glancing back at [the officer]" following him. *Id.*

This Court held that such evidence was sufficient to support a reasonable suspicion that the defendant was engaged in or connected to criminal activity, supporting the officer's initial approach and questioning of the defendant. *Id.* at 111, 300 S.E.2d at 251. We stated that given the defendant's "conduct and appearance, which by his experience and familiarity with the drug courier profile [the officer] had come to associate with the typical drug courier, further investigation was warranted." *Id.* at 110, 300 S.E.2d at 251.

Similarly, the evidence presented in this case established that defendant exhibited several of the suspicious behaviors which the officers were trained to observe. Defendant, carrying a single bag, paused, stopped, and turned around to look directly at the officers on more than one occasion; defendant walked very briskly through the terminal, continually looking over his shoulder at the officers, though no one was at the terminal to meet him; defendant appeared very nervous; and Officer Murphy observed defendant hurriedly instructing Thomas to drive the cab, even though defendant observed the officers following him. We must view the evidence along with all rational inferences which the officers were entitled to draw from these facts. *See Hendrickson*, 124 N.C. App. at 155, 476 S.E.2d at 392.

We hold that there was sufficient evidence from which Officer Murphy, a trained narcotics officer, could form a reasonable, articulable suspicion that defendant may have been involved in criminal activity "on the basis of identifiable behaviors that are usually associated with drug couriers as opposed to law abiding citizens." *Id.* In light of such evidence, the trial court's failure to suppress the cocaine recovered from the cab *ex mero motu* was not error, much less plain error. This assignment of error is overruled.

B. Motion to Set Aside the Verdicts

**[2]** Defendant next argues that the trial court erred in denying his motion to set aside the verdicts due to a "fatal variance" between the indictments and the verdicts. The record reveals that defendant's objection at trial was not on this ground; rather, it was a motion to set

aside the verdicts "for insufficiency of the facts." In any event, defendant's argument is without merit.

"[T]he State's proof must conform to the specific allegations contained in the indictment, or it is insufficient to convict defendant of the crime charged, thus warranting a motion to dismiss." *State v. Redd,* 144 N.C. App. 248, 256, 549 S.E.2d 875, 881 (2001). Defendant concedes that the indictments were valid. One indictment alleged defendant was guilty of trafficking by transporting 28 grams or more but less than 200 grams of cocaine; the other alleged defendant was guilty of trafficking by possessing 28 grams or more but less than 200 grams of cocaine. Defendant argues that he was prejudiced in that the verdict sheets simply indicated that he was guilty of trafficking cocaine by transportation, and guilty of trafficking cocaine by possession without specifying the amounts of cocaine listed in the indictments.

However, defendant stipulated at trial to the fact that the cocaine recovered from the taxicab was 83.1 grams of cocaine, an amount sufficient to convict defendant of both charges under N.C. Gen. Stat. § 90-95(h)(3) (the selling, manufacturing, delivery, transportation, or possession of twenty-eight grams or more of cocaine constitutes the felony of "trafficking"). The trial court instructed the jury that in order to find defendant guilty of both charges they must find that he knowingly possessed and transported the cocaine, and that the amount of the cocaine was 83.1 grams. Therefore, the jury's return of guilty verdicts on both charges establishes that the jury determined beyond a reasonable doubt that defendant possessed and transported 28 grams or more but less than 200 grams of cocaine, consistent with both indictments. The absence of the specific amount of cocaine listed on the verdict sheets was not error, much less plain error. The judgments entered thereon clearly establish that defendant was convicted of two violations of N.C. Gen. Stat. § 90-95, and therefore are also consistent with the indictments.

C. Motion to Dismiss

**[3]** Defendant assigns error to the trial court's denial of his motion to dismiss the charges due to insufficiency of the evidence. Specifically, defendant argues there was no evidence that defendant placed the drugs inside the taxicab.

On a motion to dismiss for insufficient evidence, " '[t]he question for the court is whether substantial evidence—direct, circumstantial,

or both—supports each element of the offense charged and defendant's perpetration of that offense.' " *State v. McCullers*, 341 N.C. 19, 29, 460 S.E.2d 163, 168 (1995) (quoting *State v. Abraham*, 338 N.C. 315, 328, 451 S.E.2d 131, 137 (1994)). "When ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State; and the State is entitled to every reasonable inference to be drawn therefrom." *State v. Fleming*, 350 N.C. 109, 142, 512 S.E.2d 720, 742, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). Moreover, "if the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion even though the evidence may also support reasonable inferences of the defendant's innocence." *State v. Clark*, 138 N.C. App. 392, 402-03, 531 S.E.2d 482, 489 (2000), *cert. denied*, 353 N.C. 730, 551 S.E.2d 108 (2001).

Here, Officer Murphy testified that as he approached the cab, defendant was motioning for Thomas to drive away. Thomas testified that defendant jumped in the cab quickly and said "let's go, let's go," and that defendant appeared frightened. Officer Murphy observed that defendant appeared very nervous and fidgety. Officer Murphy testified that defendant was "very slow getting out [of the cab] and bent over to where you could see just barely the top of his head and part of his shoulder," but not his hands. Thomas testified that when defendant moved to get out of the cab, Thomas felt defendant "struggling" behind his seat and "pushing the back of [his] seat." As soon as defendant exited the cab, he walked very quickly away from the cab to the front doors of the terminal, requiring the officers to follow him away from the cab.

Thomas further testified that his subsequent passenger sat on the opposite side of the cab from where defendant had been seated. At no time did the passenger move to the other side of the cab, lean over towards Thomas' seat, or make any other kind of movement towards the driver's seat or the floor of the cab. Thomas had cleaned his cab first thing that morning, and had not noticed anything unusual under the driver's seat. Defendant was Thomas' first passenger of the day.

Although the State lacks direct evidence of defendant's possession of the drugs, "[p]ossession of controlled substances may be either actual or constructive." *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 73 (1996) (citing *State v. Davis*, 325 N.C. 693, 386 S.E.2d 187 (1989)). "Evidence of constructive possession is sufficient

to support a conviction if it would allow a reasonable mind to conclude that defendant had the intent and capability to exercise control and dominion over the drugs." *Id.* (citing *State v. Peek*, 89 N.C. App. 123, 365 S.E.2d 320 (1988)). Where a defendant does not have exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred. *State v. Chavis*, 134 N.C. App. 546, 557, 518 S.E.2d 241, 249 (1999) (citing *State v. Brown*, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984)), *appeal dismissed and cert. denied*, 351 N.C. 362, 542 S.E.2d 220 (2000).

We emphasize that "constructive possession depends on the totality of the circumstances in each case. No single factor controls, but ordinarily *the questions will be for the jury.*" *State v. Jackson*, 103 N.C. App. 239, 243, 405 S.E.2d 354, 357 (1991) (citations omitted) (emphasis added), *affirmed*, 331 N.C. 113, 413 S.E.2d 798 (1992).

In *State v. Matias*, 143 N.C. App. 445, 550 S.E.2d 1 (2001), this Court recently upheld the trial court's denial of the defendant's motion to dismiss for insufficient evidence that he possessed cocaine recovered from a vehicle in which he was a passenger. In that case, the arresting officers detected the odor of marijuana emanating from the vehicle as it passed the officers' patrol car. *Id.* at 446, 550 S.E.2d at 2. Upon stopping the vehicle, the officers observed four occupants, including the defendant who was seated in the right rear passenger seat. *Id.* One of the officers observed marijuana seeds scattered throughout the vehicle. *Id.* A plastic bag containing both marijuana and cocaine was recovered from a crack in the seat where defendant had been seated. *Id.* On this evidence, the defendant was convicted of possession of cocaine. *Id.*

This Court upheld the denial of the defendant's motion to dismiss, concluding that "[t]his evidence is sufficient to support an inference that defendant placed the plastic bag in the crack of the right rear passenger seat where it was found, and, therefore, had the power and intent to control its disposition or use." *Id.* at 449, 550 S.E.2d at 4. Although this Court's decision in *Matias* was split, the dissent focused on the fact that the defendant was one of four occupants in the vehicle, and the State had not presented evidence to show that the drugs were not placed in the seat by another occupant or by a previous passenger in the vehicle.

In contrast, the State presented evidence in this case that defendant was the first passenger in the cab that day, that the drugs were not

present in the cab before defendant entered it, that only approximately ten minutes passed between defendant's presence in the cab and the discovery of the drugs, and that the only other passenger to ride in the cab other than defendant never touched or made any type of motion in the direction of the driver's seat or the floor of the cab behind the driver's seat.

In *Carr*, the arresting officer observed a parked vehicle with three occupants who were conversing with a pedestrian whom the officer knew to be a prior drug offender. *Carr*, 122 N.C. App. at 371, 470 S.E.2d at 72. When the vehicle drove away, the officer followed it and ran a license plate check. *Id.* Upon discovering that the vehicle was posted for salvage, the officer pulled the vehicle over. *Id.* The officer watched all three occupants of the vehicle and observed that the defendant, who had been seated in the front passenger seat, was the only occupant to exit through the front passenger-side door. *Id.* Upon exiting the vehicle, the defendant provided the officer with a fictitious name. *Id.* Pill bottles containing cocaine were recovered from under the front passenger seat and between the front passenger seat and the center armrest. *Id.* Defendant was convicted of possession with intent to sell and deliver cocaine. *Id.*

This Court noted that the defendant's presence in a vehicle from which drugs were recovered was not alone sufficient to prove the defendant's possession of the drugs. *Id.* at 372, 470 S.E.2d at 73. We noted, however, that the additional incriminating circumstances were sufficient to establish the defendant's constructive possession of the drugs. *Id.* at 373, 470 S.E.2d at 73. The only additional incriminating pieces of evidence were that the drugs were found in the area of the car occupied solely by the defendant; the defendant had been seen speaking to a known drug user earlier in the evening; the defendant was the only passenger who left the vehicle by the passenger-side door; and the defendant attempted to give the arresting officer a fictitious name when questioned. *Id.* This court determined "that these facts provide sufficient incriminating circumstances to allow the reasonable inference that defendant had the intent and capability to exercise control and dominion over the drugs." *Id.*

Likewise, in the present case, there are sufficient additional incriminating circumstances which, taken in the light most favorable to the State, allow a reasonable inference of defendant's constructive possession of the drugs. Officer Murphy testified at length regarding defendant's suspicious behavior as he departed from the "source city" bus, behavior which fit the description of what the officers were

trained to observe. Thomas also testified to defendant's nervous and excited behavior, his slamming of the cab door and his rush to leave the terminal immediately. Both Officer Murphy and Thomas testified to the suspicious manner in which defendant exited the cab, including that defendant was "struggling" behind Thomas' seat, that defendant bent down so that his arms and hands were not visible to the officers, and that he immediately walked far away from the cab. The State also presented extensive testimony from Thomas that defendant was his first passenger of the day; that Thomas had cleaned the cab right before defendant entered it; that Thomas did not observe anything unusual on the cab floors; that the subsequent and only other passenger in the cab sat behind the front passenger seat and at no time made any movement whatsoever toward or behind Thomas' seat; and that only approximately ten minutes lapsed between defendant's exiting the cab and the discovery of the drugs.

Viewed in the light most favorable to the State, the evidence, albeit circumstantial, was sufficient to withstand a motion to dismiss and allow the issue to be submitted to the jury. *See Clark*, 138 N.C. App. at 403, 531 S.E.2d at 489 ("[a]lthough the State's case centered around circumstantial evidence, taken in the light most favorable to the State, it was sufficient to withstand the defendant's motions to dismiss"); *Jackson* (issues of constructive possession are properly determined by the jury).

We acknowledge that the facts of this case, particularly the approximate ten-minute time gap between defendant's presence in the cab and the discovery of the drugs, as well as the cab leaving the bus station and returning, make this decision difficult. The outcome of this appeal may have been different had the State not introduced Thomas' testimony that he had cleaned the cab before defendant entered it and did not see anything unusual, and that the only other passenger in the cab prior to the discovery of the drugs made no movement towards Thomas' driver's seat. Such testimony, however, when taken in the light most favorable to the State, provides a sufficient link between defendant and the drugs to allow for the jury's consideration.

D. Sentencing

**[4]** Defendant argues that the trial court erred in sentencing defendant "in a manner not authorized by law." Defendant seeks a new sentencing hearing on grounds that the trial court, before imposing consecutive as opposed to concurrent sentences, stated:

> It's a sad day for you being convicted of these very serious felonies. It is really not my practice to consolidate drug charges. There's a lot of reasons for it. The primary one is that drugs in the community impact a lot of people, not just individuals who take the drugs . . . . It impacts everybody around you because they're trying to get money to get the drugs. I know people who live in communities who older people who [sic] get their houses broken into because of drugs, get hit in the head and get hurt and that's why the legislature is so tough on it.

Defendant argues that the trial court's statement violates N.C. Gen. Stat. § 15A-1334(b), which provides:

> (b)Proceeding at Hearing.—The defendant at the hearing may make a statement in his own behalf. The defendant and prosecutor may present witnesses and arguments on facts relevant to the sentencing decision and may cross-examine the other party's witnesses. No person other than the defendant, his counsel, the prosecutor, and one making a presentence report may comment to the court on sentencing unless called as a witness by the defendant, the prosecutor, or the court. Formal rules of evidence do not apply at the hearing.

N.C. Gen. Stat. § 15A-1334(b) (1999). We do not agree. Nothing in this statute precludes a trial court from explaining to a defendant why the court will impose a consecutive or concurrent sentence. We see no error in the trial court's explaining to defendant the reasoning behind the court's general approach of not consolidating drug charges.

Moreover, we do not agree with defendant that the trial court's statement reveals that it based its decision to impose consecutive sentences upon "improper . . . considerations" that do not apply to defendant. The imposition of consecutive sentences was well within the trial court's discretion under the Structured Sentencing Act. *See State v. Parker*, 350 N.C. 411, 441, 516 S.E.2d 106, 126 (1999) (citing N.C. Gen. Stat. § 15A-1354(a) (1997)) ("[t]he trial court has discretion to determine whether to impose concurrent or consecutive sentences"), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000). Defendant has failed to show an abuse of the trial court's discretion.

No error.

Judge WYNN concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge, dissenting.

No substantial evidence exists to prove that defendant is guilty of trafficking cocaine by actual or constructive possession. The evidence, at best, raises only a suspicion or conjecture that defendant possessed or placed the cocaine in the taxi. The evidence tending to show defendant possessed illegal drugs is insufficient to withstand defendant's motion to dismiss. I would reverse the trial court's denial of defendant's motion.

## I. Motion to Dismiss

Defendant argues that the evidence was insufficient as a matter of law to convict him because the State presented no evidence that defendant knew about, placed, or had possession of the cocaine later found in the taxicab. " 'An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power and intent to control its disposition or use.' " *State v. Weems*, 31 N.C. App. 569, 570, 230 S.E.2d 193, 194 (1976) (quoting *State v. Harvey* 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972)).

"This Court has held that the mere presence of the defendant in an automobile containing drugs does not, without additional incriminating circumstances, constitute sufficient proof of drug possession." *State v. Matias*, 143 N.C. 445, 448, 550 S.E.2d 1, 3 (2001) (citing *Weems*, 31 N.C. App. at 571, 230 S.E.2d at 194 (1976)).

"Where such materials are found on the premises *under the control of an accused*, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession. *Harvey*, 281 N.C. at 12, 187 S.E.2d at 714 (emphasis supplied). Here, no inference that the defendant had knowledge and possession should arise. The taxi, where the cocaine was later found, was not under the control of defendant. Thomas, the taxi driver, maintained control of the vehicle where drugs were found, and consented to the search of his vehicle.

"Proving constructive possession where defendant had nonexclusive possession of the place in which the drugs were found requires a showing by the State of other incriminating circumstances which would permit an inference of constructive possession." *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 73 (1996). Evidence that a defendant places drugs in the crack of a passenger seat of a car is

sufficient to find the power and intent to control its disposition or use. *Matias*, 143 N.C. App. at 449, 550 S.E.2d at 4. Because the State cannot prove actual possession, the State must show "other incriminating circumstances" which raise an inference that defendant placed the cocaine under the driver's seat.

" 'It is sometimes difficult to distinguish between evidence sufficient to carry a case to the jury, and a mere scintilla, which only raises a suspicion or possibility of the fact in issue.' " *State v. Brooks*, 136 N.C. App. 124, 129, 523 S.E.2d 704, 708 (1999), *disc. review denied*, 351 N.C. 475, 543 S.E.2d 496 (2000) (quoting *State v. Johnson*, 199 N.C. 429, 154 S.E. 730 (1930)). "If the evidence 'is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion for nonsuit should be allowed . . . . This is true even though the suspicion so aroused by the evidence is strong.' " *State v. LeDuc*, 306 N.C. 62, 75, 291 S.E.2d 607, 615 (1982) (quoting *In re Vinson*, 298 N.C. 640, 656-57, 260 S.E.2d 591, 602 (1979)).

## II. Issues

The dispositive issue in this case is: (1) what "other incriminating circumstances" are required by the State to prove to permit an accused's close proximity to drugs to raise a reasonable inference that defendant controlled, used, or possessed the drugs, when there is no evidence of actual possession, and (2) what is the impact of the taxi, wherein cocaine was later discovered, leaving the location for at least 10 minutes carrying an intervening passenger after defendant exited the taxi.

## III. Other Incriminating Circumstances

The majority finds sufficient "other incriminating circumstances" from testimony that defendant: (1) exited a bus coming from or going to a "source city" of drug activity, (2) acted "nervous," (3) hurriedly entered a recently cleaned taxi as the first fare of the morning, (4) telling the taxi driver to "go," (5) bent down while inside the taxi, (6) pushed on the taxi driver's seat from behind, and (7) "struggled" to exit the taxi.

None of these seven factors considered individually or taken together show "other incriminating circumstances" to prove that defendant placed the cocaine under the taxi driver's seat. These factors do show that defendant was nervous, paused, acted fidgety, and had difficulty getting out of a taxi. To translate these bodily actions

into sufficient "other incriminating circumstances" to prove that defendant placed cocaine under the seat requires adding a premise that the circumstantial evidence does not contain. The majority's logic presumes that all people who act nervous exiting buses, who are aware of others around them, who pause to gather their bearings at a bus terminal, and who struggle to exit taxis with baggage are guilty of possessing illegal drugs. Remove that presumption and these circumstances fail to raise a reasonable inference that defendant placed the drugs under the taxi driver's seat.

Based on the taxi driver's own testimony, at least two other people could have placed the cocaine in the taxi, the taxi driver himself and/or the later passenger. "The fact that defendant exited the vehicle from the right rear passenger seat—the same side of the car in which the cocaine was found—raises no more of an inference defendant knew of the presence of the cocaine than it raised as to the other occupant of the rear passenger seat who could also have hidden the drugs there without defendant's knowledge." *Matias*, 143 N.C. App. at 454-55, 550 S.E.2d at 5 (Hunter, J., dissenting).

Here, not only were two other people in the taxi after defendant exited the vehicle, the taxi drove away from the station, beyond the view of police detectives, for at least ten minutes. This gap in time and the departure of the taxi from the defendant's location further weakens any inference that defendant placed the drugs under the driver's seat.

Defendant cooperated with the detective's request and voluntarily exited the taxi, walked back into the bus station, and consented to a search of his person and baggage. These searches disclosed no connection whatsoever between defendant and the drugs or any unlawful activity. The drugs provided no link to defendant, except for his brief presence in the taxi while under the detectives' surveillance and scrutiny. There was no evidence of defendant's fingerprints on the cocaine package, there was no evidence of cocaine residue on defendant or in or about his searched bag, no drug paraphernalia, and no evidence of any other illegal drugs or weapons. Defendant was not observed engaged in any criminal activity.

IV. Other Exculpatory Circumstances

The record is replete with "other exculpatory circumstances" that the majority's opinion ignores. The majority's opinion fails to mention that defendant recently had been robbed and shot and that he had

reported this incident to the police. According to Detective Murphy, "it was [a] pretty fresh wound, I mean, not within a day or two, but it was still tender." This fact may explain defendant's timidness and nervousness while walking through the bus station, being followed by three or four plain clothes detectives. This fact may also explain defendant's "struggling" to get out of the taxi and bumping the rear of the driver's seat as he retrieved his bag and tried to rotate his wounded body out of the taxi.

Taxi driver Thomas and Detective Halsaber both testified that defendant carried a small bag, which he placed on the backseat after he entered the taxi. The detectives stood less than two feet from the cab door moments before they asked defendant to exit the taxi for questioning. Detective Murphy testified that, at that moment, defendant bent down so that he could not see defendant's hands. The implication from Detective Murphy's testimony is that at that precise moment defendant hid or stashed the drugs under the front seat. With detectives standing so close to the taxi and peering straight at defendant, it is difficult to imagine that defendant, in broad daylight, was able to remove drugs from his bag on the seat or from his body, and conceal 83.1 grams of cocaine wrapped in a paper towel without being seen. Detective Murphy testified that as he backed away from the vehicle so that defendant could exit, he observed defendant "make a straight motion down and then leaned out to get out of the vehicle. More or less a one motion thing where he bent over a little bit and opened the door to get out." There was no testimony that defendant hesitated getting out of the taxi.

The majority's opinion also omits that after defendant exited the taxi, Thomas picked up a known passenger and transported him to the Wake County jail, after he left the bus station.

Defendant was not in exclusive control or possession of the taxi, and no one observed him conceal the drugs under the seat. The "other incriminating circumstances" must be sufficient to raise an inference that defendant placed the drugs under the seat. Without more evidence than the State presented, the case should have been dismissed.

The transcript reveals that the trial judge expressed grave concerns before ruling on defendant's motion to dismiss. The court asked the prosecutor, "why in the world didn't they search the car [before it left the bus station]? . . . it's [sic] just makes it messy. . . . it just makes it difficult." The trial court also recognized the importance of the

lapse in time and location: "[m]eaning that there was a time period in which the vehicle—in which the contraband was found was elsewhere and other people were in the vicinity of the—and had an opportunity to place the drugs there possibly."

V. Non-Exclusive Constructive Possession

In *State v. McLaurin*, our Supreme Court reversed this Court concluding that "because defendant's control over the premises [a residence] in which the paraphernalia were found was nonexclusive, and because there was no evidence of other incriminating circumstances linking her to those items, her control was insufficiently substantial to support a conclusion of her possession . . . ." 320 N.C. 143, 147, 357 S.E.2d 636, 638 (1987).

In *State v. Ledford* evidence that: (1) a defendant was seen picking up objects from the ground in a public place where drugs were later found, (2) other persons had been in that area, and (3) defendant ran from that area when requested by police officers to empty his pockets, was insufficient to support an inference of constructive possession. 23 N.C. App. 314, 208 S.E.2d 870 (1974). Our Court examined the evidence in *Ledford* and found "it sufficient to raise a strong suspicion of defendant's guilt but not sufficient to take that issue beyond the realm of suspicion and conjecture." *Id.* at 316, 208 S.E.2d at 872.

The facts at bar are analogous to *Ledford*: (1) both defendants were observed bending down in an area where drugs were later found, (2) there was no evidence concerning what they bent down for, other than drugs were later found in the area nearby, (3) defendant in *Ledford* ran; the defendant here was nervous, (4) both defendants did not have exclusive control of the areas, and (5) other persons were also located in close proximity to where the drugs were found. Defendant's fleeing the scene in *Ledford* merely added to this suspicion of his guilt, but was insufficient for the evidence to go to the jury. Here, defendant's nervousness and timidity, considering that defendant had been robbed and had a "tender" and "fresh" wound to his "rear," does no more than merely add to the suspicion of his guilt.

In *Weems*, the police observed three men enter a car and drive off. Weems was siting in the front passenger seat, along with the driver. Another passenger was seated in the back. The police searched the car and found three packets of heroin, two of which

were in close proximity to the defendant in the front seat. "There was no evidence [defendant] had been in the car at any time other than during the short period . . . . There was no evidence of any circumstances indicating that defendant knew of the presence of the drugs hidden in the car." *Weems*, 31 N.C. App. at 571, 230 S.E.2d at 194-95. This Court found "no evidence of any circumstance connecting the defendant to the drugs in any manner whatsoever other than the showing of his mere presence for a brief period in the car as a passenger." *Id.* at 571, 230 S.E.2d at 195.

In *Matias*, this Court recently found sufficient "other incriminating circumstances" to show constructive possession. We distinguished *Matias* from *Weems* because "sufficient incriminating circumstances exist to give rise to a reasonable inference that defendant knew of the presence of the cocaine in the car and had the power and intent to control its disposition or use." 143 N.C. App. at 449, 550 S.E.2d at 3. The defendant in *Matias* was found guilty of constructively possessing cocaine that was discovered in a vehicle in which he was a passenger. Part of the "other incriminating circumstances" consisted of marijuana odor which emanated from the vehicle after it passed the police and again after the police stopped it. These facts were evidence of criminal activity. The cocaine was discovered in the same container that contained the marijuana. Here, there is no evidence that defendant was engaged in any criminal activity. Also, in *Matias* the vehicle in which the cocaine was found never left the police's sight or custody from the time criminal activity was suspected until the drugs were discovered.

## VI. Conclusion

After carefully examining the entire record, the seven "other incriminating circumstances" relied on by the majority are not incriminating. All the circumstantial evidence fails to raise, as a matter of law, a reasonable inference of constructive possession. Because there is no evidence of actual possession of cocaine, and only a "suspicion or conjecture" of constructive possession, the trial court erred in denying defendant's motion to dismiss. "To hold otherwise places innocent persons, riding in a vehicle where cocaine has been hidden, at risk of being charged and convicted of possession of cocaine when there is no evidence of their having knowledge of the cocaine." *Matias*, 143 N.C. App. at 453, 550 S.E.2d at 5 (Hunter, J., dissenting).

I respectfully dissent.