STATE OF NORTH CAROLINA v. JUAN CHRISTOPHER SANTIAGO

No. COA01-191

(Filed 28 December 2001)

**1. Evidence— expert pediatrician—injury the result of abuse—admissible**

The trial court did not abuse its discretion by permitting a doctor to testify that an injury to the rectum of a one-month old child was the result of abuse where defendant contended that the opinion was based solely on other signs of abuse and that the doctor was no better qualified than the jury to determine whether the rectal tear was the result of abuse. The doctor's testimony was related to a diagnosis based upon her medical examination of the victim and the doctor was an expert in pediatrics and the identification of child abuse who had examined thousands of children.

**2. Criminal Law— plea agreement—rejection by judge**

There was no error where the trial court rejected a plea agreement by which defendant would have pled guilty to felonious child abuse in exchange for dismissing a first-degree sexual offense charge and a limit on his sentence. A plea agreement must have judicial approval before it is effective, and a decision by a judge disapproving a plea agreement is not subject to appeal. N.C.G.S. § 15A-1023(b).

**3. Sexual Offenses— first-degree—sufficiency of circumstantial evidence—every reasonable hypothesis of innocence— not required to be excluded**

The trial court did not err by not dismissing a charge of first-degree sexual offense where the evidence was circumstantial, but, giving the State the benefit of every reasonable inference, a reasonable mind might accept it as adequate to support the conclusion that defendant was responsible for the child's rectal injury. It is not the rule in North Carolina that the trial court is required to determine that the evidence excludes every reasonable hypothesis of innocence.

Appeal by defendant from judgments entered 15 June 2000 by Judge Loto G. Caviness in Yancey County Superior Court. Heard in the Court of Appeals 6 December 2001.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Jennie Wilhelm Mau, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

HUNTER, Judge.

Juan Christopher Santiago ("defendant") appeals convictions for first degree sexual offense and felonious child abuse. We conclude there was no error in defendant's trial.

Evidence presented at trial tended to establish that defendant is the father of the victim, Deanna, born 17 October 1999. Andrea Palazzolo ("Palazzolo"), Deanna's mother, maintained custody of Deanna. Although defendant and Palazzolo did not live together, defendant often spent weekend nights with Palazzolo and Deanna at Palazzolo's residence.

On 13 November 1999, when Deanna was approximately one month old, defendant was visiting Palazzolo at her residence. Defendant told Palazzolo that he had been lying with Deanna on his chest, and that he had fallen asleep and forgotten she was there. Defendant told Palazzolo that he woke up and began to roll over when he realized Deanna was on his chest. Defendant said he had to grab Deanna quickly to prevent her from falling, and that it may have caused a bruise. Palazzolo testified that prior to that weekend, Deanna was a normal baby with a generally happy demeanor. Palazzolo testified that following the weekend of 13 November 1999, Deanna's demeanor changed, she stayed up all night screaming, "[n]othing would comfort her," and she could not keep down baby formula.

Defendant was at Palazzolo's residence again on 19 November 1999. Palazzolo testified she was in the living room and defendant and Deanna were in the bedroom when she heard Deanna scream. When Palazzolo entered the bedroom, defendant asked if she had any fingernail clippers. He told Palazzolo that he had been burping Deanna on his knee when "she flung forward," and as he tried to catch her, his thumb went into her mouth and cut her. Palazzolo observed that Deanna had blood in her mouth. Palazzolo testified both she and defendant were taught to burp Deanna over the shoulder, and that this is the manner in which she had seen defendant burp Deanna before.

Palazzolo further testified that at approximately 6:00 a.m. on 20 November 1999, she awoke and went to sleep in the living room by the crib of her nephew so that she could hear him if he awoke. Palazzolo left defendant alone in the bedroom with Deanna. She testified that defendant woke her at approximately 10:20 a.m. and handed her Deanna, who was "screaming really bad." Palazzolo observed that Deanna had a mark on her face. She described the mark as looking like Deanna's skin "had been sucked like a hickey," and that the mark was circular, with "teeth bruise marks." Defendant testified that while changing Deanna's diaper, he was trying to calm her down by "rubbing [his] teeth on her cheek" when his weight shifted and his teeth hit her cheek. Palazzolo observed that the whole backside of Deanna's outfit was off, and that her diaper was half off.

Palazzolo testified that defendant then said he was leaving, and stated that he was ". . . 'going to hell' " and was ". . . 'going to go kill [him]self.' " Defendant told Palazzolo that if she brought the baby out of the house, he was ". . . 'going to go to jail.' " He also told Palazzolo that if her mother did not call the police, they could ". . . 'still make this work out.' "

Palazzolo and her mother took Deanna to the police department later that day. Palazzolo then took Deanna to a hospital where she was examined by a hospital doctor who reported that Deanna had a shallow anal tear at the 7:00 position. On 22 November 1999, Deanna was more thoroughly examined by Dr. Cynthia Brown, who testified as an expert in pediatrics and identification of child abuse. Dr. Brown's evaluation of Deanna revealed various abnormalities, including the bruised oval mark on Deanna's cheek, an area on the roof of her mouth where the skin had been torn, and a tear in her rectal area at 12:00 which was more severe than the shallow tear at 7:00. Testing results also revealed Deanna was suffering from six rib fractures. Dr. Brown testified that in her opinion, the abnormalities were the result of abuse, but she never opined that defendant was the perpetrator.

Defendant was indicted on 19 January 2000 for first degree sexual offense and felony child abuse. On 6 March 2000, defendant appeared before the trial court to enter a plea of guilty to felonious child abuse. The trial court rejected the plea, and a trial proceeded on both charges. Defendant testified at trial, denying any wrongdoing. On 15 June 2000, defendant was convicted by a jury of both charges. Defendant was sentenced to a minimum of 300 and a maximum of 369 months in prison for the sexual offense, and a minimum of thirty-one

and a maximum of forty-seven months in prison for felonious child abuse. He appeals.

Defendant brings forth three assignments of error on appeal: (1) the trial court erred in allowing Dr. Brown to opine that Deanna's rectal tear was the result of penetration; (2) the trial court abused its discretion in rejecting defendant's guilty plea; and (3) the trial court erred in denying defendant's motion to dismiss the charge of first degree sexual offense. For reasons stated herein, we conclude defendant's trial was free of error.

I.

[1] Defendant first argues the trial court erred in permitting Dr. Brown to testify that in her opinion, the injury to Deanna's rectum was the result of abuse, and that it was caused by penetration with a foreign object. Defendant contends the sole basis for Dr. Brown's opinion was that because Deanna exhibited other signs of injury indicative of abuse, such as the bite mark and rib fractures, the rectal tear must also have been abuse. Defendant argues this is not a proper scientific basis for concluding the rectal tear was the result of abuse, and that Dr. Brown was no better qualified than the jury to determine whether the other injuries to Deanna made it more likely that the rectal tear was the result of abuse. We disagree.

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (1999). " ' "Expert testimony is properly admissible when it can assist the jury in drawing certain inferences from facts and the expert is better qualified than the jury to draw such inferences." ' " State v. Mackey, 352 N.C. 650, 657, 535 S.E.2d 555, 558-59 (2000) (citations omitted). An essential question in determining admissibility of such evidence is " '. . . "whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies." ' " Id. at 657, 535 S.E.2d at 559 (citations omitted).

Determining whether expert testimony is admissible is within the trial court's ". . . 'wide discretion,' " and a decision of whether to admit such evidence may only be reversed " '. . . "upon a showing that [the trial court's] ruling was so arbitrary that it could not have been

the result of a reasoned decision." ' " *State v. Washington,* 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000) (citations omitted), *disc. review denied,* 353 N.C. 396, 547 S.E.2d 427 (2001).

We first note defendant did not object to the trial court's acceptance of Dr. Brown as an expert qualified to testify in matters of pediatrics and the identification of child abuse. Dr. Brown testified that in her experience, she has examined some eight to twelve thousand children. We also note defendant failed to object to Dr. Brown's testimony when she initially stated that in her opinion, all of Deanna's injuries, including the rectal tear, were the result of abuse. " 'Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.' " *State v. Brooks,* 83 N.C. App. 179, 191, 349 S.E.2d 630, 637 (1986) (citation omitted).

In any event, we disagree with defendant's characterization of Dr. Brown's testimony to the extent he maintains her opinion was based solely on the fact Deanna exhibited other injuries in addition to the rectal tear, and that it was not scientifically supported. Dr. Brown described in detail the procedures she used in evaluating Deanna, including the use of a "coposcope," a device which allowed her to examine Deanna's rectal tear in great detail. Dr. Brown testified she has seen similar injuries in several children. She further stated there exists medical significance to the fact that Deanna had a bite mark on her face which appeared about the same time as the rectal tear. Dr. Brown testified that such bite marks, characterized as " 'suck bruise[s],' " principally occur on children in one of two settings: (1) where a parent is trying to teach a child not to bite others, and (2) where children have been sexually abused. According to Dr. Brown, the mark on Deanna's cheek was typical of the kind of bite/suction mark of the second category, which "indicates that the [perpetrator] has applied suction and that is felt to indicate kind of a sexual process."

Dr. Brown further testified that when a child has multiple injuries, doctors must examine the child's history to understand how the injuries occurred, whether a reasonable and plausible explanation has been given, and whether the explanation explains "the forces necessary to cause the injuries seen." She stated that in Deanna's case, based upon the number of injuries, the nature of the injuries, and the implausible explanations given, she believed all of the injuries were the result of abuse. She testified she was not given a plausible explanation as to how the rectal tear occurred, and that, based upon her

examination of Deanna and all of her observations, she was "highly suspicious" that the injury resulted from penetration by a foreign object.

"Our courts have consistently upheld the admission of expert testimony that a victim was sexually abused." *State v. Youngs*, 141 N.C. App. 220, 226, 540 S.E.2d 794, 798 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 397, 547 S.E.2d 430 (2001). " ' "[W]here the expert's testimony relates to a diagnosis derived from the expert's examination of the [child] . . . in the course of treatment, it is not objectionable because it . . . *states an opinion that abuse has occurred.*" ' " *Id.* at 226, 540 S.E.2d at 799 (citations omitted). "Accordingly, an expert may testify to his opinion that a child has been sexually abused as long as this conclusion relates to a diagnosis based on the expert's examination of the child during the course of treatment." *Id.* at 227, 540 S.E.2d at 799.

In this case, Dr. Brown's testimony that in her opinion Deanna's rectal tear was the result of abuse by penetration was related to a diagnosis based upon her medical examination of Deanna. We disagree with defendant that the jury was just as qualified as Dr. Brown, an expert in pediatrics and identification of child abuse who has examined thousands of children, to determine whether the nature of Deanna's injuries was indicative of abuse, and to ascertain whether Deanna's rectal tear was likely the result of penetration.

Our decision is clearly supported by case law involving the admission of similar testimony. *See, e.g., State v. Starnes*, 308 N.C. 720, 733, 304 S.E.2d 226, 233-34 (1983) (expert's opinion testimony that tears in child's genital area were likely caused by a penis was admissible where based upon expert's observations, physical examination of child, and expert's experience); *State v. Crumbley*, 135 N.C. App. 59, 66, 519 S.E.2d 94, 99 (1999) (expert's opinion testimony that child's narrow hymen could have been caused by penetration and that child had been sexually abused held admissible where testimony was based on expert's own medical examination of child and expert's knowledge of child abuse studies).

Moreover, contrary to defendant's assertion, Dr. Brown never testified that defendant was the person who caused Deanna's rectal injury, or any of the other injuries she sustained. Dr. Brown simply testified as to the injuries she observed on Deanna, and her expert medical opinion as to the cause of such injuries. Defendant has failed to show the introduction of Dr. Brown's testimony was an abuse of

the trial court's wide discretion and so arbitrary that it could not have been the result of a reasoned decision. This assignment of error is overruled.

## II.

**[2]** By his next assignment of error, defendant argues the trial court erred in rejecting his plea agreement. Defendant appeared before the trial court on 6 March 2000 to plead guilty to the charge of felonious child abuse in exchange for the dismissal of the first degree sexual offense charge and a limit on his sentence of a minimum of twenty and a maximum of thirty-three months with credit for time served. The trial court rejected the plea, expressing concern that the arrangement would only subject defendant to a maximum of an additional year and a half in prison.

A plea arrangement involving a recommended sentence must have judicial approval before it is effective. N.C. Gen. Stat. § 15A-1023(b) (1999). "It is well established in this State that a lack of judicial approval renders a proposed plea agreement 'null and void.' " *State v. Johnson*, 126 N.C. App. 271, 274, 485 S.E.2d 315, 317 (1997) (citation omitted). The statute further provides that "[a] decision by the judge disapproving a plea arrangement is not subject to appeal." N.C. Gen. Stat. § 15A-1023(b). We therefore reject this argument. Although defendant cites various federal and state constitutional provisions, arguing rejection of the plea was "fundamentally unfair," our Supreme Court has noted that " '[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest.' " *State v. Wallace*, 345 N.C. 462, 467, 480 S.E.2d 673, 676 (1997) (quoting *Mabry v. Johnson*, 467 U.S. 504, 507, 81 L. Ed. 2d 437, 442 (1984)).

## III.

**[3]** In his final argument, defendant contends the trial court erred in denying his motion to dismiss the charge of first degree sexual offense. Defendant argues the evidence gave rise to no more than a suspicion that defendant committed a sexual offense.

In reviewing the denial of a motion to dismiss for insufficient evidence, the trial court must ". . . 'consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom.' " *State v. Bowers*, 146 N.C. App 270, 273,

552 S.E.2d 238, 240 (2001) (citation omitted). A trial court must deny a motion to dismiss where there exits "substantial evidence— whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). "[I]f the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion [to dismiss] even though the evidence may also support reasonable inferences of the defendant's innocence." *State v. Clark*, 138 N.C. App. 392, 402-03, 531 S.E.2d 482, 489 (2000), *cert. denied*, 353 N.C. 730, 551 S.E.2d 108 (2001).

Initially, we reject defendant's argument that "[e]ven if the evidence were sufficient to support a reasonable inference that the defendant inserted some object into the rectum of his 33 day old daughter, this would not constitute a first degree sexual offense." Our legislature has determined that a first degree sexual offense occurs when a person engages in a sexual act "[w]ith a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." N.C. Gen. Stat. § 14-27.4(a)(1) (1999). A "sexual act" is defined in pertinent part as "the penetration, however slight, by any object into the genital or anal opening of another person's body: provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes." N.C. Gen. Stat. § 14-27.1(4) (1999). Clearly, the insertion of an object into Deanna's rectum by defendant would constitute a first degree sexual offense.

Moreover, we hold the evidence, taken in the light most favorable to the State, was sufficient to allow the charge to be submitted to the jury. The medical evidence presented established that Deanna suffered from two anal tears, a shallow tear at the 7:00 position, and a more severe tear at the 12:00 position. Dr. Brown's testimony, which we have previously held to be proper, provided an expert medical opinion that Deanna's rectal tear at 12:00 was the result of penetration. Her testimony also established a medical connection between the tear and the " 'suck bruise' " mark on Deanna's cheek, which Dr. Brown testified is often a sexual mark which appears concurrently with other sexual abuse injuries. Dr. Brown testified the mark on Deanna's cheek had bruising around it suggesting suction and pro-

longed mouth to skin contact, and was therefore consistent with the type of mark indicative of sexual abuse. She further testified that based upon her information, the cheek bruise and the penetration injury were noted to have appeared "about the same time." Defendant admitted to having inflicted the mark on Deanna's cheek on the morning of 20 November 1999 when he had exclusive control of Deanna.

The evidence also established that on 20 November 1999, defendant maintained exclusive control of Deanna from approximately 6:00 a.m. until 10:30 a.m. when he handed Deanna to Palazzolo and stated he was ". . . 'going to go kill [him]self.' " Palazzolo testified that Deanna was "screaming really bad" and "the whole back part [of her outfit] was off." "The diaper was kind of like half off." She further testified Deanna's cheek "looked like it had been sucked like a hickey" and had "teeth bruise marks." Defendant continued to make several statements immediately following the incident, including: " 'I'm going to hell' "; " '[i]f you take this baby out of the house, I'm going to go to jail' "; " 'I guess we're not going to my dad's house for Thanksgiving' "; and " '[i]f your mom doesn't call the police, we can still make this work out.' "

Although the evidence that defendant committed the sexual offense is circumstantial, "[c]ircumstantial evidence may be utilized to overcome a motion to dismiss ' "even when the evidence does not rule out every hypothesis of innocence." ' " *State v. Golphin*, 352 N.C. 364, 458, 533 S.E.2d 168, 229 (2000) (citations omitted), *cert. denied*, —— U.S. ——, 149 L. Ed. 2d 305 (2001); *see also Clark*, 138 N.C. App. at 403, 531 S.E.2d at 489 ("[a]lthough the State's case centered around circumstantial evidence, taken in the light most favorable to the State, it was sufficient to withstand the defendant's motions to dismiss").

Giving the State the benefit of every reasonable inference to be drawn from the evidence, we hold there is sufficient evidence as a reasonable mind might accept as adequate to support the conclusion that defendant was responsible for inflicting Deanna's rectal injury. Defendant contends it was possible that Gary Norton, an older friend who lived with Palazzolo, was responsible for the abuse. However, defendant did not present any evidence at trial that Norton or any other individual abused Deanna. In any event, "[i]t is not the rule in this jurisdiction that the trial court is required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss." *State v. Smith*, 146 N.C.

App. 1, 7, 551 S.E.2d 889, 893 (2001). The trial court did not err in denying defendant's motion to dismiss the charge of first degree sexual offense.

Defendant's additional assignments of error which he has not set forth or argued in his brief are deemed abandoned. N.C.R. App. P. 28(a).

No error.

Judges McGEE and BRYANT concur.