STEELMAN, Judge.
On 10 December 2001 defendant shot Bryan Harris (Harris), the brother of his then girlfriend, Misty Johnson (Misty), in the face with a .22 caliber handgun. The incident was instigated by defendant's belief that Harris has stolen a $100.00 bill from his wallet earlier that day. Following the alleged theft, defendant became angry and began throwing things around the house that he shared with Misty. Misty then suggested that she go and confront her brother about the missing money. Misty testified that she wanted defendant to accompany her, but that it was her intention that defendant remain in the car while she confronted Harris. Defendant brought with him a .22 caliber pistol, which he claimed was for protection. Defendant did not remain in the car. Mistywent to the door of the house, asked Harris to come out on the porch, and asked him if he had taken defendant's money. At that time defendant climbed the steps and inquired of Harris: "M***** F*****, where's my money?" Defendant then fired two shots, one passed over the head of Harris and the other went straight into Harris' right eye. Harris survived the shooting, but lost his eye. Because there was no phone where Harris lived, Misty drove to her grandparents' house to call 911. Defendant got in the car with her, and took off in her car when she went inside to call 911. Defendant testified that he threw the gun off a bridge. The following day, defendant turned himself in to police.
On 11 February 2002, defendant was indicted for the attempted first-degree murder of Harris. Defendant and the State reached a plea arrangement whereby defendant agreed to plead guilty to assault with a deadly weapon with intent to kill inflicting serious injury with an agreed upon sentence of 60-81 months (the defendant also agreed to plead guilty to a separate drug charge with a consecutive agreed upon sentence of 12-15 months). The plea was presented to Judge Richard D. Boner on 30 January 2003. Judge Boner rejected the plea agreement and continued the matters for trial. The attempted first-degree murder charge came on for trial before Judge Patti at the 21 April 2003 session of Catawba County Superior Court.
At trial, defendant testified that he intentionally shot over Harris' head to frighten him, and that the recoil action of the pistol caused him to accidentally fire a second shot immediatelyafter the first shot. Harris and Misty both estimated a two second pause between shots. Further, they both testified that defendant first aimed the gun at Harris' head, raised the gun and fired over Harris' head, then lowered the gun to Harris' head again and fired the second shot.
At the jury charge conference defendant asked the trial court to instruct the jury on accident. The trial court denied this request. The defendant further requested an instruction on assault with a deadly weapon inflicting serious injury, arguing that it is a lesser included offense of attempted first-degree murder. The trial court also denied this request. The jury convicted defendant of attempted first degree murder, and he was sentenced from the mitigated range to 124-158 months imprisonment. Defendant appeals.
In defendant's first assignment of error, he argues that Judge Boner committed error or plain error by refusing to accept the plea agreement reached by defendant and the State. We disagree.
Defendant contends that Judge Boner was prepared to accept the plea agreement until the State provided false information concerning Harris' medical bills. Specifically, defendant alleges that the State advised the court that Harris had $400,000.00 in unpaid medical bills, when in fact the true amount was just under $40,000.00. Defendant contends that if the trial court had known the correct amount of the unpaid medical bills, it would have accepted the plea agreement. Defendant further contends that the trial court violated N.C. Gen. Stat. § 15A-1023(b)(2004) because it did not inform the parties as to the reason it rejected the pleaagreement, and did not give the defendant and the State an opportunity to amend the agreement.
A plea arrangement involving a recommended sentence must have judicial approval before it is effective. N.C. Gen. Stat. § 15A-1023(b) (1999). "It is well established in this State that a lack of judicial approval renders a proposed plea agreement ' null and void.'" The statute further provides that "[a] decision by the judge disapproving a plea arrangement is not subject to appeal." N.C. Gen. Stat. § 15A-1023(b).
State v. Santiago, 148 N.C. App. 62, 68, 557 S.E.2d 601, 605 (2001)(citation omitted). Defendant argues that he is entitled to appeal from the rejection of a plea agreement under N.C. Gen. Stat. § 15A-1023(b) when the trial court fails to inform the defendant of the reasons for rejecting the agreement or fails to specifically inform the parties of their right to negotiate a new agreement as required by that statute.
We have carefully reviewed the record in this matter, and find that it does not support defendant's assertions of what transpired in front of Judge Boner. The record clearly shows that Judge Boner rejected the plea because he did not agree with the agreed upon sentence, and so advised the parties. Further, the language of N.C. Gen. Stat. § 15A-1023(b) is clear and unequivocal: "A decision by the judge disapproving a plea bargain is not subject to appeal." Defendant has no right of appeal from Judge Boner's rejection of the plea arrangement. This assignment of error is without merit.
In defendant's second assignment of error he argues the trial court erred in rejecting defendant's request that he instruct the jury on accident. We disagree. "The trial court has a duty to instruct the jury on all substantial features of the case arising on the evidence. All defenses arising from the evidence presented during trial, including the defense of accident, are substantial features of a case and therefore warrant instructions." State v. Garrett, 93 N.C. App. 79, 82, 376 S.E.2d 465, 467 (1989)(citations omitted).
The instruction that defendant requested, N.C.P.I. Crim. 307.11, states in relevant part:
When evidence has been offered that tends to show that the alleged assault was accidental and you find that the injury was in fact accidental, the defendant would not be guilty of any crime even though his acts were responsible for the victim's injury. An injury is accidental if it is unintentional, occurs during the course of lawful conduct, and does not involve culpable negligence. Culpable negligence is such gross negligence or carelessness as imparts a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.
In the instant case, defendant admits that he made a decision to threaten Harris with a loaded pistol, and in fact admits firing the loaded pistol over Harris' head for the purpose of frightening him. The injury Harris sustained as a result of defendant's actions cannot be deemed "unintentional" under the definition of that term as stated in the requested instruction.
First, defendant was undisputedly guilty of "such gross negligence or carelessness as imparts a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others" when he fired a shot over Harris. Second, by threatening Harris with a loaded gun, without justification or excuse,defendant was committing an unlawful act (e.g. assault with a deadly weapon under N.C. Gen. Stat. § 14-33(c)(1) (2004)). Our Supreme Court has reasoned on facts remarkably similar to those at hand:
The evidence is thus undisputed that the defendant sought out the victim, that the defendant intentionally confronted the victim with a loaded firearm, that the defendant assaulted the victim, and that the gun was in the defendant's hand when two bullets, one of which entered the victim's body, were fired from it. "The fact that the defendant claims now that he did not intend the shooting does not cleanse him of culpability and thus give rise to a defense of accident." Where, as here, the evidence is uncontroverted that the defendant was engaged in unlawful conduct and acted with a wrongful purpose when the killing occurred, the trial court does not err in refusing to submit the defense of accident.
State v. Riddick, 340 N.C. 338, 343, 457 S.E.2d 728, 731-32 (1995)(citation omitted); see also State v. Walker, 34 N.C. App. 485, 487, 238 S.E.2d 666, 667 (1977). This assignment of error is without merit.
In defendant's third assignment of error he argues that the trial court committed plain error, by failing to instruct the jury on lesser included offenses of attempted first degree murder. We disagree.
At trial, the only lesser included offense requested by defendant was assault with a deadly weapon inflicting serious injury. The trial court determined that this was not a lesser included offense of attempted first-degree murder, and defendant does not contest that ruling. Rather, defendant now argues that the trial court committed plain error by failing to instruct thejury on its own initiative on the lesser included offense of attempted voluntary manslaughter, because defendant was acting under the heat of passion when he shot Harris.
When there is evidence of guilt of a lesser offense, a defendant is entitled to have the trial court instruct the jury with respect to that lesser included offense even though the defendant makes no request for such an instruction.
State v. Lang, 58 N.C. App. 117, 118, 293 S.E.2d 255, 256 (1982)(citation omitted). However, a "defendant is entitled to have a lesser included offense submitted to the jury only when there is evidence to support that lesser included offense." State v. Smith, 351 N.C. 251, 267, 524 S.E.2d 28, 40 (2000)(citation omitted). "If the State's evidence is sufficient to fully satisfy its burden of proving each element of the greater offense and there is no evidence to negate those elements other than defendant's denial that he committed the offense, defendant is not entitled to an instruction on the lesser offense." Id. at 267-68, 524 S.E.2d 28, 40 (citation omitted).
"Voluntary manslaughter is a lesser included offense of murder and is defined as the unlawful killing of a human being without malice, premeditation or deliberation. Killing another `while under the influence of passion or in the heat of blood produced by adequate provocation' is voluntary manslaughter." State v. Long, 87 N.C. App. 137, 141, 360 S.E.2d 121, 123 (1987)(citations omitted). The provocation sufficient to reduce murder to voluntary manslaughter must be both great and immediate. See State v. Ward, 286 N.C. 304, 312, 210 S.E.2d 407, 413 (1974), death penaltyvacated by 428 U.S. 903, 49 L.Ed. 2d 1207 (1976)(citations omitted). "The law extends its indulgence to a transport of passion justly excited and to acts done before reason has time to subdue it; the law does not indulge revenge or malice, no matter how great the injury or grave the insult which first gave it origin." Id. at 313, 210 S.E.2d at 414 (citations omitted). For example, in order for adultery to reduce murder to voluntary manslaughter, one spouse must find the other "in the very act of intercourse, or under circumstances clearly indicating that the act had just been completed, or was `severely proximate.'" Id. at 312-13, 210 S.E. 2d at 413-14.
In the instant case, there are three reasons why there was not sufficient evidence of provocation to support submission of a voluntary manslaughter instruction: (1) defendant merely had a suspicion that Harris had taken his money, see Ward, 286 N.C. at 313, 210 S.E. 2d at 414; (2) the act, if it in fact occurred at all, had occurred hours before, see Id. at 312-13, 210 S.E. 2d at 413-14, and (3) a misdemeanor larceny is simply not sufficient provocation to warrant a reduction from attempted first-degree murder to attempted voluntary manslaughter, see State v. Rogers, 323 N.C. 658, 667, 374 S.E.2d 852, 858 (1989).
We note that although defendant did not make this argument in either his assignments of error in the record or his brief, he argues in his reply brief that there was sufficient provocation immediately preceding the shooting. Defendant argues that his testimony that he and Harris "did have words. . . . we spewed backand forth" rises to the level of adequate legal provocation to mandate giving an instruction on attempted voluntary manslaughter. We hold that even if an argument did take place, it would not justify an instruction on voluntary manslaughter. Mere words are insufficient provocation, "as language, however abusive, neither excuses nor mitigates the [attempted] killing, and the law does not recognize circumstances as a legal provocation which in themselves do not amount to an actual or threatened assault." State v. Watson, 287 N.C. 147, 154, 214 S.E.2d 85, 90 (1975). This assignment of error is without merit.
In his final assignment of error defendant argues that there was insufficient evidence presented at trial to convict him of attempted first-degree murder, and thus the trial court should have allowed his motion to dismiss. We disagree.
When ruling on a motion to dismiss in a criminal trial, the court must consider the evidence in the light most favorable to the State and give to the State the benefit of every reasonable inference which may be drawn from the evidence. The motion is properly denied if there is substantial evidence of each essential element of the crime alleged in the indictment or of a lesser offense included therein. "Substantial evidence is `such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
Long, 87 N.C. App. 137, 142, 360 S.E.2d 121, 124 (citations omitted).
First-degree murder as alleged in the instant case is defined as "the unlawful killing of a human being with malice, premeditation, and deliberation." State v. Myers, 299 N.C. 671, 677, 263 S.E.2d 768, 772 (1980). Defendant specifically arguesthat the evidence does not support finding the required elements of premeditation and deliberation.
Premeditation means thought over beforehand for some length of time, however short, but no particular time is required for the mental process of premeditation. Deliberation does not require brooding or reflection for any appreciable length of time, but imports the execution of an intent to kill in a cool state of blood without legal provocation, and in furtherance of a fixed design. The requirement of "cool state of blood" does not mean that defendant must be calm or tranquil. An unlawful killing is deliberate and premeditated if done pursuant to a fixed design to kill, notwithstanding that defendant was angry or in an emotional state at the time, unless such anger or emotion was such as to disturb the faculties and reason.
Id, at 677, 263 S.E.2d at 772-73 (citations omitted).
The evidence presented by the State tends to show that defendant, hours after he discovered his money was missing, traveled to Harris' home to confront him. On the way, defendant loaded the pistol he had brought with him. Once defendant's girlfriend had drawn Harris out of his home, defendant approached him, raised his gun, and fired two shots at Harris. Though defendant contends it was never his intention to shoot Harris, merely to scare him, the State offered the testimony of the other two eyewitnesses which tends to show defendant aimed the gun directly at Harris' face before he fired the second shot. There was ample evidence presented at trial such that "a reasonable mind might accept [it] as adequate to support" the verdict. This assignment of error is without merit. Because defendant has not argued his other assignments of error in his brief, they are deemed abandoned. N.C. R. App. P. Rule 28(b)(6) (2003).
NO ERROR.
Judges CALABRIA and ELMORE concur.
Report per Rule 30(e).